James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

THE KLAGES COAL AND ICE COMPANY, d/b/a Royal Crown Bottling Company, Defendant-Appellee.

No. 20241.

United States Court of Appeals, Sixth Circuit.

Dec. 10, 1970.

Donald S. Shire, Department of Labor, Washington, D. C., Laurence H. Silberman, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Carin Ann Clauss, Helen W. Judd, Attys., U. S. Department of Labor, Washington, D. C.,

6. Cf. Seagrave Corp. v. Mount, 6 Cir., 212 F.2d 389, 397.

Aaron A. Caghan, Regional Atty., on the brief, for appellant.

James C. Herndon, Akron, Ohio, for appellee.

Hill, Farrer & Burrill, Carl M. Gould, Stanley E. Tobin, Kyle D. Brown, Los Angeles, Cal., on brief for American Research et al., amici curiae.

Before WEICK, McCREE, and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

Appellant, the Secretary of Labor, brought this action pursuant to Section 17 of the Fair Labor Standards Act, 29 U.S.C. §§ 201, 217 to enjoin appellee from violating the overtime requirements of the Act and to restrain continued withholding of unpaid overtime compensation to twenty-eight of its present and former employees. Appellee contended at trial that the employees in question came within the exception to the overtime requirement contained in Section 13(a) (1) of the Act, 29 U.S.C. § 213(a) (1) for "outside salesmen." After a full hearing, the District Court held that the employees were "outside salesmen" within the meaning of 29 U. S.C. § 213(a) (1) and the regulations issued pursuant thereto, 29 C.F.R. § 541.-500 et seq. and dismissed the appellant's action. The question on appeal is whether there is sufficient evidence to support the finding of the District Court.

Appellee is a franchised bottler and distributor of products of the Royal Crown Bottling Company serving a four-county area in Ohio with its principal place of business in Akron, Ohio. The products marketed by appellee include Royal Crown Cola, Diet-Rite, Lemon-Lime, and Nehi flavors, all in both bottles and cans. During the years pertinent hereto,[1] appellee's customers increased from about 1300 customers to a present total of 1375. About five per cent of appellee's total dollar volume consists of sales made directly to another bottler and to several wholesale vendors. Approximately ninety-five per cent of appellee's annual dollar volume consists of sales made to chain store retail outlets, independent retail outlets, and vending machine locations. Of these sales, approximately 60 per cent of total dollar volume is attributable to chain store retail outlets. The servicing of the chain and retail outlets, as well as the vending machine locations, is the function of appellee's routemen or drivers.[2]

Appellant has maintained throughout that the routemen are ordinary drivers or deliverymen entitled to be paid time and one-half their regular rate for hours worked per week in excess of forty. Appellee successfully maintained below that these routemen were engaged in sales as "outside salesmen" and thus exempt from the overtime requirement of the Act.

The exemption sought by appellee is found in 29 U.S.C. § 213(a) (1), which provides:

Sec. 13. (a) The provisions of sections 6 and 7 shall not apply with respect to—(1) any employee employed in a bona fide executive, administrative, or professional capacity * * * or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act * * *).

The most current regulations issued by the Secretary to define and delimit those employees who are entitled to be exempt under this section of the Act are

---

1. The complaint was filed on May 23, 1967, and alleged violations of 29 U.S.C. §§ 7 (a) (1) and 15(a) (2) since September 11, 1964. A stipulated amendment was made on February 14, 1969, to include alleged violations from May 23, 1967, until February 1, 1969.

2. In the pleadings, at trial, and on appeal, the parties have characterized the employees in question in conclusory fashion, appellants calling them "drivers" or "deliverymen," the appellee denominating them "salesmen." The Court will use the neutral term "routemen."

found in 29 C.F.R. § 541.500 et seq. Section 541.500 of the regulations provides:

Sec. 541.500 *Definition of "Outside Salesman".*—Section 541.5 defines the term "outside salesman" as follows:

The term "employee employed * * * in the capacity of outside salesman" in Section 13(a) (1) of the act shall mean any employee:

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) making sales within the meaning of section 3(k) of the act, or

(2) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) whose hours of work of a nature other than that described in paragraph (a) (1) or (a) (2) of this section do not exceed 20 percent of the hours worked in the workweek by non-exempt employees of the employer: *Provided,* That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as non-exempt work.

In addition, subsection 541.505 deals in detail with the problem presented by this case, namely that of drivers who, in servicing their routes, perform both delivery and sales functions. Pertinent parts of this section of the regulations will be set forth below. At this point the section pertaining to the 20 per cent limitation on non-exempt work should be noted:

Nonexempt work in the definition of "outside salesman" is limited to "20 per cent of the hours worked in the work-week by nonexempt employees of the employer." The 20 per cent is computed on the basis of hours worked by nonexempt employees of the employer who perform the kind of nonexempt work performed by the outside salesman. If there are no employees of the employer performing such nonexempt work, the base to be taken is 40 hours a week, and the amount of non-exempt work allowed will be 8 hours a week. 29 C.F.R. § 541.507.

It is conceded by both parties that under this section eight hours per week per man is the proper figure for non-exempt work.

Because the controversy is concerned so directly with the nature of the routemen's work, it is appropriate at this point to describe briefly the appellee's distribution operation and the activities of the routemen. The discussion will center on the servicing of the retail chain store outlets because this part of the operation accounts for both the bulk of appellee's sales and the major part of the routemen's work.

So much of the facts as may be stated to be undisputed are as follows. Initially, in a newly opened retail store or in a new account, the store manager must receive permission from the chain's central office in order to carry appellant's products. Permission takes the form of an authorization letter from the central office to the store manager. In the case of a newly opened store, appellee's route manager or sales manager would contact the chain's central office to solicit the authorization letter for the store. This same procedure seems to be followed in the case of placing new products in established outlets. The authorization letter does not obligate the store manager to buy any goods. Once authorized, the store manager must decide whether he desires to carry the authorized products, and if so, he must allocate the shelf space to be stocked with the new products. He must also contact the appellee's management, which will then assign the store to a route.

Once the product is established, the routemen's function inside the store ordinarily is to survey the shelves allocated to his products, determine how many cases would be needed to refill them, and

then restock the shelves accordingly from the stock carried on his truck. In some cases the routeman loads the shelves himself, in others he leaves the stock in the aisles to be shelved by the store's employees. The routeman would then prepare an invoice for the stock delivered and receive payment. In addition, the routeman must sort and crate the empties returned to the store for deposit. Most routemen of some experience seem to have a good idea of how much stock will be needed for the calls of a particular day and would make up an order for the stock to be placed on his truck by other employees the preceding night. He would also carry an extra supply of beverage for any special promotional displays he hoped to place in a store. The placement of additional stock for promotions connected to appellee's advertising was also handled on the basis of an authorization by the store's central office and often depended on the volume of sales of the product and the availability of additional space.

The main points of alleged error on the part of the trial court urged by appellant have to do with the court's evaluation of the evidence presented on three issues: (1) whether there was a prior contractual arrangement for the purchase of beverages between the appellee and any retail chain outlet; (2) whether the routeman fulfilled any significant sales function; and (3) whether the servicing of vending machines was nonexempt work, and, if so, whether the time so spent came within the 20 per cent tolerance allowed by 29 C.F.R. §§ 541.500(b) and 541.507, *supra*. These several issues are, of course, made pertinent by the regulations to the one central issue whether the employees were "outside salesmen."

Various parts of 29 C.F.R. § 541.505, a detailed regulation entitled, "Driver salesmen," have been cited by each party as support for its view of the contested factual determinations made by the trial judge. The focus of this regulation is on drivers who also engage in a sales function. Although such men must be brought within the general rules of 29 C.F.R. § 541.500 to be exempt from the overtime requirements, section 541.505 sets forth particular factors which the Secretary has determined to be helpful in analyzing whether an employee with such mixed duties is an "outside salesman."

Section 541.505(a) reiterates in more specific terms the requirement that the routeman must be a salesman by profession, engaged regularly and customarily in making sales.

Sec. 541.505. (a) Where drivers who deliver to an employer's customers the products distributed by the employer also perform functions concerned with the selling of such products, and questions arise as to whether such an employee is employed in the capacity of outside salesman, all the facts bearing on the content of the job as a whole must be scrutinized to determine whether such an employee is really employed for the purpose of making sales rather than for the service and delivery duties which he performs and, if so, whether he is customarily and regularly engaged in making sales and his performance of nonexempt work is sufficiently limited to come within the tolerance permitted by § 541.5. The employee may qualify as an employee employed in the capacity of outside salesman if, and only if, the facts clearly indicate that he is employed for the purpose of making sales and that he is customarily and regularly engaged in such activity within the meaning of the Act and this part. As in the case of outside salsmen whose jobs do not involve delivery of products to customers, the employee's chief duty or primary function must be the making of sales or the taking of orders if he is to qualify under the definition in § 541.-5. He must be a salesman by occupation. If he is, all work that he performs which is actually incidental to and in conjunction with his own sales effort is exempt work. All other work of such an employee is non-

exempt work. A determination of an employee's chief duty or primary function must be made in terms of the basic character of the job as a whole. All of the duties performed by an employee must be considered. The time devoted to the various duties is an important, but not necessarily controlling, element.

Paragraph (b) of this subsection discusses the function of the routeman possessing mixed selling and delivery functions with still greater particularity, citing as an example employees of "distributors of carbonated beverages." As a plain example of such an employee who is engaged in making sales, the regulation states:

> Thus, there is little question that a routeman who provides the only sales contact between employer and the customers and takes orders for products which he delivers from stock in his vehicle or procures and delivers to the customer on a later trip, and who receives compensation commensurate with the volume of products sold, is employed for the purpose of making sales. 29 C.F.R. § 541.505(b).

Appellees contend that this language is a description of the function of the routemen in the bulk of their work, servicing the retail chain store accounts, while appellant argues that the controlling language may be found in paragraph (c), which provides in part:

> (c) One source of difficulty in determining the extent to which a route driver may actually be engaged in "making sales" arises from the fact that such a driver often calls on established customers day after day or week after week, delivering a quantity of his employer's products at each call. Plainly, such a driver is not "making sales" when he delivers orders to customers to whom he did not make the initial sale in amounts which are exactly or approximately prearranged by customer or contractual arrangement or in amounts specified by the customer and not significantly affected by solicitations of the customer by the delivering driver. Making such deliveries, as well as recurring deliveries the amounts of which are determined by the value of sales by the customer since the previous delivery rather than by any sales effort of the driver, do not qualify the driver as an outside salesman nor are such deliveries and the work incident thereto directly to the making or soliciting of sales by the driver so as to be considered exempt work. 29 C.F.R. § 541.505(c)

The contrasting language of this paragraph states:

> On the other hand, route drivers are "making sales" when they actually obtain or solicit, at the stops on their routes, orders for their employer's products from persons who have authority to commit the customer for purchases. A driver who calls on new prospects for customers along his route and attempts to convince them of the desirability of accepting regular delivery of goods is likewise engaged in sales activity and is making sales to those from whom he obtains a commitment. Also, a driver salesman calling on established customers on his route, carrying an assortment of the articles which his employer sells, may be making sales by persuading regular customers to accept delivery of increased amounts of goods or of new products, even though the initial sale or agreement for delivery of the employer's products may have been made by someone else. Work which is performed incidental to and in conjunction with such sales activities will also be considered exempt work, provided such solicitation of the customer is frequent and regular. Incidental activities include loading the truck with the goods to be sold by the driver salesman, driving the truck, delivering the products sold, removing empty containers for return to the employer, and collecting payment for the goods delivered.

The trial court, although not finding the evidence to present a border-line case, nevertheless devoted the bulk of its opinion to an analysis of paragraph (e), which provides:

(e) As indicated in paragraph (a) of this section, whether a route driver can qualify as an outside salesman depends on the facts which establish the content of his job as a whole. Accordingly, in borderline cases a determination of whether the driver is actually employed for the purpose of, is customarily and regularly engaged in, and has as his chief duty and primary function the making of sales, may involve consideration of such factors as a comparison of his duties with those of other employees engaged as (1) truck drivers and (2) salesmen; possession of a salesman's or solicitor's license when such license is required by law or ordinances; presence or absence of customary or contractual prearrangements concerning amounts of products to be delivered; description of the employee's occupation in union contracts; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; proportion of earnings directly attributable to sales effort; and other factors that may have a bearing on the relationship to sales of the employee's work. However, where it is clear that an employee performs nonexempt work in excess of the amount permitted by § 541.5, he would be nonexempt in any event and consideration of such factors as the foregoing would not be pertinent.

Specifically, the trial court found that there was no contractual prearrangement for either quantities or specific products between appellee's management and the management of any chain store or its central office. The court further found, and it is undisputed, that the routemen are characterized as "Sales Servicemen" or "Driver Salesmen" in their union's collective bargaining agreement with the appellee. In addition, the court found that the appellee required sales experience as a qualification for a routeman, provided sales training and held regular sales conferences, paid its routemen a flat fee plus commissions based on volume, and that differences in incomes were based on differences in aggressiveness and sales ability of the routemen. Finally, the court found as a fact that the routemen performed a regular, important sales function in soliciting more shelf space and placing promotional materials and displays. It was further found that less than 20 per cent of the working hours of the routemen is spent in nonexempt work. The ultimate conclusion, therefore, was that the appellee's routemen were "outside salesmen" within the meaning of 29 U.S.C. § 213(a) (1) and thus exempt from the overtime requirement.

An employer seeking an exemption from the overtime requirements of the Act under 29 U.S.C. § 213(a) (1) must prove that each employee is entitled to the exemption by plain and unmistakable evidence. *See* Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). Exemptions must be limited to those falling expressly within the statute. Wirtz v. Lunsford, 404 F.2d 693, 697 (6th Cir. 1968). Whether employees are exempt from the requirements of the Act is primarily a question of fact. Walling v. General Industries Co., 330 U.S. 545, 550, 67 S.Ct. 883, 91 L.Ed. 1088 (1947). Findings of fact made by the District Judge in this regard may not be set aside unless they are clearly erroneous. Walling v. General Industries Co., *supra;* Wirtz v. Atlanta Life Ins. Co., 311 F.2d 646 (6th Cir. 1963). Applying these standards, and giving some weight to the requirement of 29 C.F.R. § 541.505(a) that "all the facts bearing on the content of the job as a whole" must be considered, in addition to the requirement of the regulations that "the employee may qualify as * * * [an] outside salesman if, and only if, the facts clearly indicate that he is customarily and regularly engaged in such activity," we hold that the

finding of the District Court on the issue of exemption was clearly erroneous.

Although some of the factors set forth by the regulations for consideration were present in the evidence, the general conclusion of the District Court that the routemen were "outside salesmen" is not supported by the total circumstances presented. Aside from evidence that the routemen attended sales meetings and often had prior sales experience of some sort, the finding that the routemen "customarily and regularly" engaged in making sales is lacking in evidentiary support. The trial court and appellee emphasized the fact that no sales contracts were made by appellee's management and the managers of the retail outlets. We note, however, that appellee's sales manager made the initial solicitation for an authorization letter from the chain home office allowing a store manager to stock appellee's products. The initial decision to carry appellee's products in any store is made by the store manager who allocates the shelf space to be given to appellee's products. There is no evidence that routemen participate in or influence the initial decision to buy or the volume of purchases. The evidence shows that the bulk of the routemen's time in servicing the retail chain accounts, which amount to 60 per cent of appellee's annual dollar volume, consists essentially of restocking the shelves and removing empties on a regular weekly basis in each store on the route. The familiarity of most drivers with the probable needs of each store on their routes enables them to stock their trucks accordingly in advance of calling on the stores. Thus, the routemen do not solicit orders and return with stock; they restock a volume requirement initially determined by the customer without their intervention. While there may not be "prior contractual arrangements" between appellee and the stores in a strict sense, it still may be accurately stated that the routemen are "delivering orders to customers to whom [they] did not make the initial sale in amounts which are exactly or approximately prear-

ranged *by customer or* contractual arrangement * * * " 29 C.F.R. § 541.505(c) (emphasis added).

There is evidence for appellee that the routemen solicited additional shelf space in the stores from time to time, a factor found by the trial court to be significant in finding that the routemen performed a sales function. The Court has reviewed all the testimony of the routemen on this point and does not find that such solicitations were sufficiently regular or frequent to justify classifying the routemen as "salesmen." Solicitations would be an important, perhaps deciding factor, were other selling functions performed in the stores; standing as the only selling activity performed in the stores, however, the evidence of irregular and infrequent requests for more space is an important factor in this case refuting the idea that the routemen were engaged as salesmen. Moreover, there was no evidence that such solicitations ever affected a significant increase in sales to a store independently of significant increases in consumer demand for appellee's products or the presence of an advertising promotion authorized by the chain which required additional stock. The trial court's finding that doubling shelf space triples sales was based on a generality of the trade recited by a witness for appellee and did not reflect any actual experience of a routeman or a customer of appellee so far as the present record discloses.

Other evidence shows that routemen attempt to obtain new customers along their routes. Appellee's accounts grew by about 75 outlets of all types in the last five years, but it was not shown to what extent such increases were attributable to the efforts of routemen. In any case, any prospective new retail chain customer has to receive authorization from its central office to carry a new product, and this authorization is in all cases obtained by appellee's management from the central office. Thus, the fact that routemen make stops to seek new customers cannot be considered the making of sales since the store manager

alone cannot enter a binding agreement to carry the products. Even if such activity were considered the making of sales, it was not shown to be of such regularity or frequency in relation to the delivery and stocking activities as to render the routemen salesmen. Finally, it cannot be said on the evidence that the regular job of the routemen was to open up new accounts.

A second error in the opinion below alleged by the appellant is the finding respecting the servicing of vending machines. The court below found that this work, even if considered to be non-exempt work, did not exceed the 20 per cent limitation. Servicing vending machines has been held to be nonexempt work when it constituted the bulk of an employee's time. Wirtz v. Dr. Pepper Co., 53 L.C. 31,797, 17 W.H. Cases 343 (N.D.Tex.1966). Upon review of the testimony on this issue, the Court finds that the appellee did not carry its burden of proof. Section 213(a) does not provide a class exemption; appellee was required to show that each routeman for whom it sought an exemption spent less than 20 per cent of his working hours per week in servicing vending machines. The main evidence adduced was the testimony of one routeman who stated that he spent about fifteen minutes per week on vending machines. There are 163 vending machine accounts, however, and evidence from route books shows that for some routemen such locations constituted 15 to 20 per cent of their accounts. The evidence, in sum, was insufficient to demonstrate the amount of time spent by each routeman on his vending machine accounts per week, or that the time spent came within the 20 per cent tolerance. We think it was clear error for the trial judge to treat, in effect, such work as a de minimis factor in analyzing the functions of the routemen. In view of our holding that the other evidence in the case did not establish the exemption, however, the Court finds no reason to remand for a new trial to determine whether the time spent in servicing vending machines was within the 20 per cent limitation.

Finally, the cumulative effect of the other factors cited by the trial judge is not sufficient to establish the exemption. For example, the fact that the routemen were denominated "salesmen" in their collective bargaining agreement is inconclusive. The finding that differences in earnings of the routemen were attributable to differences in aggressiveness and sales ability was based solely on an unsubstantiated opinion of a witness for appellee and did not take into account differences in the size and quality of routes. Mandatory attendance at sales meetings held by the appellee likewise is inconclusive. The sum of all these factors does not, we think, overcome the view we take of the function of the routemen inside the store, which from this record, appears to us primarily and regularly to be delivering inventory and restocking shelves in amounts determined in the first instance by the customer at locations usually first obtained by appellee's management employees. Therefore, the finding that the routemen were entitled to be exempt from the overtime requirements is reversed and the action is remanded to the District Court for determination of the relief to which the appellant is entitled in accordance with the provisions of the Fair Labor Standards Act and consistent with the conclusion herein that the exemption of the affected employees as "outside salesmen" is not established.

Reversed and remanded.