[No. 31461-4-II.   Division Two.   May 17, 2005.]

LARIE E. BOSTAIN ET AL., *Respondents*, v. FOOD EXPRESS, INC., *Appellant.*

500

*Dale H. Schofield*, for appellant.

*James F. Gray* (of *Law Offices of James F. Gray*), for respondents.

*Robert M. McKenna, Attorney General*, and *Amanda J. Goss, Assistant*, on behalf of Department of Labor and Industries, amicus curiae.

*Philip A. Talmadge* (of *Talmadge Law Group, P.L.L.C.*) on behalf of Washington Trucking Association, amicus curiae.

¶1 BRIDGEWATER, J. — Food Express, Inc., appeals from a partial summary judgment for overtime wages due to Larie Bostain. We hold that concerning "overtime" pay using the "plain meaning rule" the Washington Minimum Wage Act, chapter 49.46 RCW (WMWA), applies only to those hours an employee works within the state. Larie Bostain, an interstate truck driver, averaged 48 hours of driving/loading per week, but he did not drive/load more than 40 hours in any workweek within Washington State. Because Bostain was not entitled to include the hours he drove outside Washington, he was not entitled to overtime wages, prejudgment interest, or attorney fees.[1] We reverse.

---

[1] Food Express alleged in its brief that if it owed Bostain any overtime wages it was for only 2.5 hours. Because neither party briefed or argued this issue, we do not address it. RAP 10.3(a)(5); *R.A. Hanson Co. v. Magnuson*, 79 Wn. App. 497, 505, 903 P.2d 496 (1995), *review denied*, 129 Wn.2d 1010 (1996).

¶2 Food Express is a motor carrier having its principal office in Arcadia, California. It hauls food products and chemicals in California, Nevada, Idaho, Arizona, Washington, Oregon, and Utah. The majority of its hauling occurs intrastate but some interstate hauling occurs between California and the above listed Western States.

¶3 Food Express's operation in Washington consists of a terminal in Vancouver, Washington. It also has approximately five trucks parked in the Seattle area and other trucks located elsewhere in Washington.

¶4 Food Express hired Bostain on August 6, 1992, as an interstate driver based at the Vancouver terminal. The company paid his wages on an hourly rate. If he traveled more than 200 miles, then Food Express paid him by the mile. When it hired Bostain, Food Express explained that because of the interstate nature of his driving, it would not pay him overtime. Bostain never objected to this policy while employed at Food Express. Neither did he request or demand payment of overtime wages. He also never pursued a claim with any regulatory agency, including the Washington Department of Labor and Industries (WDLI), regarding overtime wages.

¶5 The president of Food Express, Walter Keeney, had spoken with WDLI to determine whether to pay Bostain overtime. After these talks, Food Express determined that it did not have to pay overtime wages to Bostain.

¶6 Bostain began and ended his runs from the Vancouver terminal. Food Express terminated Bostain on May 28, 2002, for insubordination asserting he had failed to follow the Food Express dispatcher's instructions and violated United States Department of Transportation (DOT) safety standards. Bostain had picked up a load of cargo late in the afternoon on May 23, in Eugene, Oregon. If he had continued to drive his load, he would have exceeded his DOT daily allowance of hours for truck drivers. His dispatcher told him to get a motel in Eugene and stay there until the next morning. Rather than follow those instruc-

tions, Bostain drove the truck home and parked it near his house.

¶7 After his termination, Bostain did not file a claim for overtime wages with the WDLI. Instead, in December 2002, he filed a complaint with the Clark County Superior Court seeking overtime wages under RCW 49.46.130(1); double wages and attorney fees under RCW 49.52.070 for Food Express's willful failure to pay overtime wages; and a finding that Marc Widing, the Vancouver terminal manager, should be personally liable for the overtime wages under RCW 49.46.010(4) and 49.52.070.

¶8 Keeney completed a log audit of Bostain's final year of employment, June 2001 through May 2002, and found that during that year Bostain's driving time within Washington State constituted 37 percent of his total driving time, 63 percent was out of state.

¶9 The log audit also showed that Bostain averaged a total of 48 hours of driving/loading per week. Keeney's audit showed that Bostain never worked more than 40 hours in any workweek within Washington State.

¶10 In January 2003, Food Express filed its answer with affirmative defenses, alleging that when RCW 49.46.130(1) is read in conjunction with WAC 296-128-012, the statute contemplates that for the overtime wages requirements to apply to interstate truck drivers, the drivers must drive more than 40 hours in a week within Washington State. It also alleged the affirmative defense of estoppel.

¶11 On February 6, Food Express's counsel wrote a letter to the WDLI requesting its opinion as to whether Food Express was liable to Bostain for overtime wages. Elaine Fischer, an industrial relations specialist for the WDLI, responded that Food Express did not owe Bostain overtime wages because "[t]he department regulates only hours worked within the state of Washington," citing WAC 296--128-012. Clerk's Papers (CP) at 225.

¶12 On February 19, Bostain moved for partial summary judgment as to the agreement and related affirmative

defenses and out-of-state hours. The trial court granted the motion in part, finding that Food Express owed Bostain overtime wages because RCW 49.46.130(1) preceded over WAC 296-128-012 "because the former does not speak to the issue of whether the hours worked must be within the State of Washington . . . ." CP at 859.

¶13 The court also concluded that Bostain's employment was subject to RCW 49.46.130(1) absent an applicable exemption. It held that Food Express failed to prove that an exemption in the WMWA applied. The court found that Fischer's letter was not dispositive because the letter stated that WDLI regulated only hours worked in Washington State instead of stating that WDLI regulated all employees in the state of Washington.

¶14 The trial court entered its amended final order and judgment on February 19, 2004. The court entered judgment against Food Express of $9,846.64 for unpaid overtime wages, $3,236.21 prejudgment interest up to September 26, 2003, and $15,000 attorney fees. The court calculated the attorney fees using the lodestar method.

## I. Standard of Review

¶15 Food Express asks this court to review the trial court's grant of summary judgment. This court reviews a grant of summary judgment de novo, placing itself in the same position as the trial court in reviewing the evidence. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 169, 736 P.2d 249 (1987). We uphold a grant of summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." CR 56(c). Summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 630, 71 P.3d 644 (2003).

## II. WMWA

## A. Statutory Interpretation

■ ¶16 The first issue raised in this appeal is one of first impression. We must interpret RCW 49.46.130 of the WMWA. We do so employing a de novo standard of review. *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996). And we seek to carry out the statute's legislative intent. *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). If a statute is plain and unambiguous, we derive its meaning from the statutory language. *Dep't of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982).

■ ¶17 In *Department of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 43 P.3d 4 (2002), our Supreme Court directed courts to derive the plain meaning of a statute "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11. Such a formulation, the court noted, was "more likely to carry out legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 11-12.

■ ¶18 Under the "plain meaning rule" we look to the ordinary meaning of the statutory language, the underlying legislative purposes, and closely related statutes. By interpreting statutory provisions, courts can achieve a " ' "harmonious, total statutory scheme . . . which maintains the integrity of the respective statutes." ' " *In re Estate of Kerr*, 134 Wn.2d 328, 336, 949 P.2d 810 (1998) (quoting *State v. Williams*, 94 Wn.2d 531, 547, 617 P.2d 1012 (1980) (quoting *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974))). We read statutes relating to the same subject as complementary and not in conflict. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994).

## B. RCW 49.46.130

¶19 RCW 49.46.130(1) states in part:

Except as otherwise provided in this section, no employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

¶20 The plain meaning here is obvious: an employer must pay overtime compensation to an employee for work performed in excess of 40 hours in a week unless an exemption applies. The purpose of the WMWA is to establish a minimum wage for employees of the state "to encourage employment opportunities within the state." RCW 49-.46.005. WAC 296-128-011(1) defines the "[o]vertime rate of pay" as the "amount of compensation paid for hours worked within the state of Washington in excess of forty hours per week."

¶21 Using the plain meaning rule, only one legislative intent is possible: the minimum wage act applies only to those hours an employee works within the state. Any other reading results in "unlikely, absurd, or strained consequences," *Thurston County ex rel. Bd. of County Commr's v. City of Olympia*, 151 Wn.2d 171, 175, 86 P.3d 151 (2004) (citing *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990)), that are inconsistent with the statute's purpose. *State v. Wittenbarger*, 124 Wn.2d 467, 484-85, 880 P.2d 517 (1994). It is apparent from these provisions that overtime compensation applies only to the hours an employee works within the state of Washington.

¶22 We give great weight to the WDLI's interpretation of the statute absent a compelling indication that its interpretation conflicts with the legislative intent. *Wash. Water Power Co. v. Wash. State Human Rights Comm'n*, 91 Wn.2d 62, 68-69, 586 P.2d 1149 (1978). The WDLI is limited to its legislatively granted powers and authority, *Wash. Water Power Co.*, 91 Wn.2d at 69, and in promulgating WAC

296-128-011, it acted within its power. WAC 296-128-011 derives from RCW 49.46.130(2)(f) and defines overtime as not being owed to a truck driver unless the truck driver works more than 40 hours within the state. Thus, since the WDLI's interpretation of RCW 49.46.130 does not conflict with the legislative intent, we can use WAC 296-128-011 as an aid in determining the legislative intent of RCW 49.46.130.

¶23 Both parties rely on *Department of Labor & Industries v. Common Carriers, Inc.*, 111 Wn.2d 586, 762 P.2d 348 (1988). Common Carriers employed a truck mechanic from January 1, 1983, to July 17, 1984. *Common Carriers*, 111 Wn.2d at 587. During that time the employee worked solely in Washington in excess of 40 hours per week during 35 pay periods. *Common Carriers*, 111 Wn.2d at 587. Common Carriers failed to pay the employee any overtime wages. *Common Carriers*, 111 Wn.2d at 587.

¶24 The WDLI brought a derivative overtime wage claim on the employee's behalf. *Common Carriers*, 111 Wn.2d at 587. Our Supreme Court examined "whether regulation of maximum hours worked in the federal Motor Carrier Act (MCA) (49 U.S.C. § 3101 et seq.) preempts the overtime wage provision in the WMWA." *Common Carriers*, 111 Wn.2d at 588. The court found that Congress had not expressed a clear intent to preempt state overtime wage provisions. *Common Carriers*, 111 Wn.2d at 589. Thus, the court held that RCW 49.46.130 did not apply. *Common Carriers*, 111 Wn.2d at 590.

¶25 The parties also rely on *Department of Labor & Industries v. Overnite Transportation Co.*, 67 Wn. App. 24, 834 P.2d 638 (1992), *review denied*, 120 Wn.2d 1030 (1993). Overnite was a Virginia corporation registered in Washington to do business as a common carrier. *Overnite*, 67 Wn. App. at 27. Overnite received goods from both inside and outside the state for distribution. *Overnite*, 67 Wn. App. at 27. By August 1987, the company's 11 Washington driver employees collectively had worked almost 2000 hours of overtime without receiving overtime compensation as de-

scribed in the WMWA. *Overnite*, 67 Wn. App. at 27. WDLI investigated and discovered that the employees had experienced a collective wage loss of $9,786.91 for overtime work performed *within the state*. *Overnite*, 67 Wn. App. at 27-28. It requested that Overnite comply with the WMWA but Overnite refused. *Overnite*, 67 Wn. App. at 28.

¶26 WDLI then filed a complaint in the superior court seeking recovery of the lost wages on behalf of the 11 employees. *Overnite*, 67 Wn. App. at 28. The King County Superior Court granted summary judgment in favor of the WDLI. *Overnite*, 67 Wn. App. at 28.

¶27 In its review, Division One of this court considered three issues: (1) whether the superior court erred when it found that the federal MCA preempted the WMWA's application to an interstate motor carrier; (2) whether WMWA's overtime provisions on interstate motor carriers unduly burdened interstate commerce; and (3) whether the WDLI failed to comply with the Administrative Procedure Act, chapter 34.05 RCW, when it adopted the rule applying the WMWA to interstate motor carriers. *Overnite*, 67 Wn. App. at 28, 31-32. The court held that the federal MCA did not preempt the WMWA's overtime provisions following *Common Carriers*. *Overnite*, 67 Wn. App. at 31. And it noted that working entirely within the state was not a prerequisite for receiving overtime compensation and ruled that the overtime wage provisions did not unduly burden interstate commerce. *Overnite*, 67 Wn. App. at 30, 32. Finally, the court ruled that the WDLI did not need to adopt and publish the rule from *Common Carriers* under the Administrative Procedure Act because the Supreme Court's opinion "had the force of law on the date on which it was decided." *Overnite*, 67 Wn. App. at 33.

¶28 Thus, both *Common Carriers* and *Overnite* concerned only hours worked within Washington State. *Overnite* is similar only in that hours worked within the state were considered, even though the drivers "may be and have been called upon to drive interstate." *Overnite*, 67 Wn. App. at 30. That was the context wherein the court held

that those drivers were not disqualified from overtime if they had driven outside the state but had worked more than 40 hours in any week. The claim was only for those hours worked within the state; thus its holding has no bearing here.

¶29 Under RCW 49.46.130(1), an employer cannot require an employee to work more than 40 hours a week in state unless the employer compensates the employee at one-and-one-half times the employee's regular rate. That situation did not exist here and, thus, the trial court erred in granting partial summary judgment.

## C. RCW 49.46.130(2)(f)

¶30 Bostain argues that Food Express failed to prove it met the "reasonably equivalent" exception found in RCW 49.46.130(2)(f). Br. of Resp't at 5. But Food Express argues that the "reasonably equivalent" exception is not triggered until a driver works more than 40 hours a week in Washington State. Reply Br. of Appellant at 2. Food Express is correct. Neither this provision nor the WAC that implements it are relevant to this case. RCW 49.46.130(2)(f) provides an exemption from RCW 49.46.130(1) for employers in the following circumstance:

> An individual employed as a truck or bus driver who is subject to the provisions of the Federal Motor Carrier Act (49 U.S.C. Sec. 3101 et seq. and 49 U.S.C. Sec. 10101 et seq.), if the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to that required by this subsection, for working longer than forty hours per week.

¶31 WAC 296-128-012 relates to the exception discussed in RCW 49.46.130(2)(f), which is not at issue in this case. WAC 296-128-012 states in part:

> The compensation system under which a truck or bus driver subject to the provisions of the Federal Motor Carrier Act is paid shall include overtime pay at least reasonably equivalent to that required by RCW 49.46.130 *for working within the state*

*of Washington in excess of forty hours a week.* To meet this requirement, an employer may, with notice to a truck or bus driver subject to the provisions of the Federal Motor Carrier Act, establish a rate of pay that *is not on an hourly basis* and that includes in the rate of pay compensation for overtime.

WAC 296-128-012(1)(a) (emphasis added).

¶32 But this provision is not at issue here because Bostain did not work within Washington State more than 40 hours a week, and he was paid on an hourly basis.

¶33 Food Express also places great importance on the letter it received from Elaine Fischer at WDLI. That letter, however, is not a formal administrative decision. Although a court will sometimes give deference to an agency's interpretation, "the court is the final authority on statutory construction and it need not approve regulations or decisions inconsistent with a statute." *Moses v. Dep't of Soc. & Health Servs.*, 90 Wn.2d 271, 274, 581 P.2d 152 (1978). Fischer's understanding of WDLI's intent is not a formal administrative decision and, thus, not subject to deference. *City of Sunnyside v. Fernandez*, 59 Wn. App. 578, 581, 799 P.2d 753 (1990).

### III. Attorney Fees on Appeal

¶34 Food Express requests attorney fees on appeal under RCW 4.84.010. Because Food Express is the substantially prevailing party in this appeal, we award fees and costs to Food Express.

¶35 To summarize: Bostain was not entitled to overtime wages under the statute. Because Bostain is not entitled to overtime wages, he is not entitled to prejudgment interest or attorney fees. As such, we do not discuss his cross-appeal claims regarding prejudgment interest or attorney fees.

¶36 Reversed.

QUINN-BRINTNALL, C.J., concurs.

¶37 MORGAN, J. (concurring) — A statute is ambiguous if it has two or more reasonable meanings.[2] The statute in issue here, RCW 49.46.130, reasonably might apply to all hours worked, or only to all hours worked within the state. As a consequence, it is ambiguous.

¶38 To resolve the ambiguity, I would look to the intent of the legislature.[3] I would also look to the Department of Labor and Industries' interpretation as manifested in WAC 296-128-011.[4] Both indicate that RCW 49.46.130 applies only to hours worked within the state. Hence, I concur in the result.

Review granted at 156 Wn.2d 1010 (2006).

---

[2] *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 242-43, 88 P.3d 375 (2004).

[3] *CAT*, 151 Wn.2d at 242.

[4] *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992).