[No. 56816-7-I.   Division One.   January 16, 2007.]

Larry Miller et al., *Individually and on Behalf of a Class, Respondents*, v. Farmer Brothers Company, *Appellant*.

---

[31] *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 901, 969 P.2d 64 (1998).

652

*Michael Reiss, Michael J. Killeen, Jennifer K. Schubert,* and *Roger A. Leishman* (of *Davis Wright Tremaine, LLP*), for appellant.

*Martin S. Garfinkel* (of *Schroeter Goldmark & Bender*) and *Roblin J. Williamson* (of *Williamson & Williams*), for respondents.

¶1 BAKER, J. — A class of former employees sued Farmer Brothers Company for overtime pay under the Washington Minimum Wage Act,[1] and the trial court granted summary judgment in favor of the class. Farmer Brothers appeals the summary judgment order, and the employees cross-appealed an attorney fee issue. We affirm the summary judgment because the employees are not outside salesmen and must be paid overtime under the Washington Minimum Wage Act. We also affirm the trial court's application of historical attorney fee rates because there was no abuse of discretion.

I

¶2 Farmer Brothers is a California corporation with multiple offices in Washington State. The company manufactures, sells, and delivers coffee and related "allied" products to customers. Customers are served by route sales representatives (RSRs). The main duty of an RSR is to deliver required quantities of product, called "par" quantities, to established customers. Although an RSR is called a "sales" position, prior sales experience is not listed among the company's job qualifications.

¶3 RSRs are assigned established routes with between 70 and 300 customers. The routes are mostly in Washington, although some have stops in Idaho and Oregon. RSRs

---

[1] Ch. 49.46 RCW.

are paid a salary and receive a percentage commission on everything they deliver, even if the "sale" is to an established customer.[2] When Farmer Brothers assigns a route, the RSR receives a route card listing all the customers on the route and the par amount of product each customer expects. Route lists are computerized, and each RSR has a hand-held unit that is linked to the home office. They must stock their trucks with enough products to refill each customer's stock to par level, but they are expected to keep the lowest feasible amount of product on the truck.

¶4 While covering their routes, RSRs are also expected to increase sales to current customers and solicit new customers if they have time. They are told to budget about 20 percent of their day for this purpose. Farmer Brothers instructs them that "[r]egular solicitation can be sandwiched in between customer stops to definite advantage if you have made the time for it." A half-day on Fridays is set aside for solicitations only, which, according to one RSR, allows a few hours to sell "without the need to stay on top of a route." But working 12 to 14 hour days with few or no breaks, most RSRs manage to achieve only 8 to 15 solicitations per week. In fact, some experienced RSRs have worked an entire year without adding any new accounts. New accounts are also generated by other employees; Farmer Brothers employs some full-time solicitors and also sets sales quotas for management personnel.[3]

¶5 A new RSR works as a relief driver. Relief drivers work in the warehouse for an hourly wage, then cover routes for RSRs when needed. When relief drivers cover routes, they are paid a salary but do not receive commissions. They are not expected to make solicitations. Neither regular RSRs nor relief drivers are paid hourly or overtime wages for route work because Farmer Brothers classifies

---

[2] In its opinion on Farmer Brothers' interlocutory appeal of class certification, this court mistakenly said that RSRs received commissions only on "new sales." *Miller v. Farmer Bros. Co.*, 115 Wn. App. 815, 819, 64 P.3d 49 (2003).

[3] The trial court erred when it stated in its order on summary judgment that "the RSRs are the sole face of Farmer's sales efforts."

them as outside salesmen, an exempt category of employee under wage and hour laws.

¶6 A class consisting of former RSRs and relief drivers, represented by Larry Miller, sued Farmer Brothers for back overtime pay under the Washington Minimum Wage Act.[4] Farmer Brothers challenged class certification, and this court remanded for a more adequate statement of the Civil Rule 23 factors.[5] After the class was certified and discovery ended, Farmer Brothers moved to limit the damages to hours worked within Washington State. The motion was denied. Both parties agreed that summary judgment was proper because the facts were largely undisputed. Miller prevailed, and damages were stipulated. The trial court awarded attorney fees to the class, using historical rates in effect when the time was originally billed.

## II

¶7 This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court.[6] Summary judgment is proper if the court, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, finds no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[7] A " 'complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.' "[8] Issues of statutory

---

[4] RCW 49.46.130(1).

[5] *Miller*, 115 Wn. App. at 829.

[6] *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000).

[7] CR 56(c); *Ellis*, 142 Wn.2d at 458.

[8] *Stewart v. Estate of Steiner*, 122 Wn. App. 258, 264, 93 P.3d 919 (2004) (quoting *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989)), *review denied*, 153 Wn.2d 1022 (2005).

construction are also reviewed de novo.[9] An award of attorney fees is reviewed for manifest abuse of discretion.[10]

¶8 The Washington Minimum Wage Act protects the health and welfare of citizens and encourages employment opportunities within the state.[11] Under the act, employees must be paid per hour and must receive at least the minimum wage.[12] For any hours over 40 worked in a week, the employee must be paid one and one half times the regular rate.[13] Certain categories of workers, including outside salesmen, are exempt from the hourly pay and overtime requirement.[14] Exempt workers may be employed on a salary basis.[15] Exempt status in this case is a legal determination based on the worker's primary duties; the job title, job description, or perceptions of the employee are not dispositive.[16] The employer bears the burden of proving exempt status.[17]

## Outside Salesman Exemption

¶9 An "outside salesman" is defined as any employee:

(1) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business, as well as on the premises (where the employee regulates his own hours and the employer has no control over the total number of hours worked) in the following alternative activities:

---

[9] *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001).

[10] *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987).

[11] RCW 49.46.005.

[12] RCW 49.46.020.

[13] RCW 49.46.130(1).

[14] RCW 49.46.130(2), .010(5).

[15] *See Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 298, 996 P.2d 582 (2000) (under RCW 49.46.010(5)(c), professionals may be paid on a salary basis).

[16] 29 C.F.R. § 541.504(b); *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377, 382-84 (6th Cir. 1970). The parties discuss the former federal regulation on driver salesmen, former 29 C.F.R. § 541.505 (2003). Because both regulations are helpful and because neither is binding on this court, both are discussed below.

[17] *Drinkwitz*, 140 Wn.2d at 301.

(a) In making sales; including any sale, exchange, contract to sell, consignment for sale, shipment for sale or other disposition [and]

. . . .

(2) Whose hours of work of a nature other than that described in (1)(a), (b), (c) and (d) of this section do not exceed 20 percent of the hours worked in the work week by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work; and

(3) Who is compensated by the employer on a guaranteed salary, commission or fee basis and who is advised of his status as "outside salesman."[18]

The pertinent subsection in this case is (1)(a). Unless Farmer Brothers raises a genuine issue of material fact as to whether RSRs are primarily employed to make sales, any other issue of fact is immaterial.

¶10 There is no reported case in Washington interpreting the outside salesman exemption. Because the federal regulation defining "outside salesman" is similar to the Washington rule,[19] we can look to federal law for guidance on the issue.[20] However, because the federal Fair Labor Standards Act of 1938[21] and the Washington Minimum Wage Act[22] are not identical, we are not bound by federal authority.[23]

¶11 The current federal regulations would classify RSRs as nonexempt based on their primary duties:

Drivers who generally would not qualify as exempt outside sales employees include:

. . . .

[18] WAC 296-128-540.

[19] 29 C.F.R. § 541.500; WAC 296-128-540.

[20] *Drinkwitz*, 140 Wn.2d at 298.

[21] 29 U.S.C. §§ 201-219.

[22] Ch. 49.46 RCW.

[23] *Drinkwitz*, 140 Wn.2d at 298.

A driver who often calls on established customers day after day or week after week, delivering a quantity of the employer's products at each call when the sale was not significantly affected by solicitations of the customer by the delivering driver or the amount of the sale is determined by the volume of the customer's sales since the previous delivery.[24]

Farmer Brothers argues that the RSR is "making sales" under WAC 296-128-540(1)(a) on each customer visit, even if the visit is solely to restock par quantities of product. The plain language of the Washington Administrative Code, Farmer Brothers contends, says "any sale"; therefore, any exchange of payment for product qualifies. Farmer Brothers does not discuss how the verb "making" affects the definition of "making sales."

¶12 Farmer Brothers' definition of "making sales" is too broad and must be rejected. If making a sale is nothing more than exchanging product for payment, then almost all deliveries would qualify as outside sales. There is no question that when a customer pays for and receives a product, a sale has occurred. But that does not necessarily mean that the RSR has "made" the sale. To "make" is defined as "[t]o cause (something) to exist."[25] "Making sales" involves creating the sale—that is, persuading a customer to buy a product he has not already consented to buy.

¶13 Farmer Brothers argues that because each customer is under no contractual obligation to continue buying from Farmer Brothers, RSRs "consummate their own sales" when they deliver. The customer, Farmer Brothers contends, may decide that he needs only 5 pounds of coffee this week, not 10, so there are no prearranged quantities and the RSR must try to sell. However, the former federal regulation discusses this sort of ongoing arrangement and does not equate it with making sales:

Plainly, such a driver is not making sales when he delivers orders to customers to whom he did not make the initial sale in

---

[24] 29 C.F.R. § 541.504(d)(2).

[25] BLACK'S LAW DICTIONARY 975 (8th ed. 2004).

amounts which are exactly or approximately prearranged by customer or contractual arrangement or in amounts specified by the customer and not significantly affected by solicitations of the customer by the delivering driver.[26]

It is true that the amount of product to be delivered on each visit may vary because a customer may have used, or decide he needs, more or less coffee than usual. However, the evidence shows that this rarely happens. Customers normally want to be restocked in a prearranged quantity. Delivering products to customers in prearranged quantities is not making sales. It is, to quote a Farmer Brothers training manual, "Service of the Customer."

¶14 According to the same manual, servicing customers on established routes is job number one. Solicitation is possible if the RSR has time to spare:

> As far as your deliveries or servicing of customers are concerned your route is generally laid out on a definite basis. You are expected to dispatch your routing work as speedily as possible, then use the margin to the best advantage in soliciting new business.

RSRs have little time to solicit. Each route has between 70 and 300 customers, whose stock of goods must be replenished daily, weekly, or monthly on a fixed schedule. Some of the routes are small, urban zones, and some range over large geographical areas. Each worker also "downloads" Tuesdays and Fridays, completing paperwork, restocking trucks, and counting money. RSRs have time for only 8 to 15 sales solicitations per week. Even if they do not make this modest goal, there are no adverse employment consequences, illustrating that selling is not the primary focus of the job. Finally, relief drivers are expected to do the job of an RSR but are not expected to make solicitations. If sales and solicitations were the primary duty of an RSR, relief drivers should be expected to fulfill this function.

---

[26] Former 29 C.F.R. § 541.505(c).

¶15 Many of Farmer Brothers' own employee declarations belie the notion that RSRs are primarily salesmen:

> I determine the customer's needs based on a listing of the products typically used by the customer and the established PAR level which the customer has indicated is the amount they wish to have on hand between deliveries. I will conduct a quick inventory and replenish stocks to PAR level. In addition to stocking products to a PAR level, I also may talk to the customer about purchasing additional products or additional stock.
>
> . . . .
>
> If the customer hasn't used up their supplies or spices, sometimes I won't leave anything. . . . Customers know we're looking out for them when we tell them we won't leave this or that because they really don't need it.
>
> . . . .
>
> I see what is gone. Sometimes I ask the cook if it is okay to order this or that. . . . I key the orders into the computer. I go to the truck, print the invoice, pull the product, and cart it in or carry it in, depending on the amount. . . . Depending on how things are going, I might spend a few minutes talking about a product.
>
> . . . .
>
> I pace myself during the day and take time for new solicitations whenever I can.
>
> . . . .
>
> Much of my activity in seeking out new customers occurs on Fridays because I do not make scheduled stops on that day; half of that day is [set] aside explicitly to solicit new customers.

According to Farmer Brothers' own declarations, RSRs are employed for the purpose of servicing customers; solicitations and sales are secondary.[27]

¶16 There is no dispute that RSRs do perform some sales work. They solicit existing customers to increase the quan-

---

[27] *See Huntley v. Frito-Lay, Inc.*, 96 Wn. App. 398, 404, 979 P.2d 488 (1999) (evidence that worker's sales responsibilities "pale[d] in comparison" and were only incidental to his nonsales responsibilities raised material question of fact as to whether he was outside salesman).

tity of Farmer Brothers products purchased and seek out new customers to add to their routes. They receive commissions on all sales, which make up a significant portion of their pay. The RSRs are, in the federal parlance, "driver salesmen," who deliver products and also do some selling.[28] But driver salesmen are not exempt from the Washington Minimum Wage Act if they spend more than 20 percent of their time doing nonexempt work.[29]

¶17 The 20 percent threshold for driver salesmen has not yet been examined in Washington case law, but federal regulations and cases examine the issue at length.[30] Again, the new and former federal regulations first look at the entire content of the job to discover if the employee's primary duty is in fact making sales:

> Where drivers who deliver to an employer's customers the products distributed by the employer also perform functions concerned with the selling of such products, and questions arise as to whether such an employee is employed in the capacity of outside salesman, all the facts bearing on the content of the job as a whole must be scrutinized. . . .[31]
>
> Drivers who deliver products and also sell such products may qualify as exempt outside sales employees only if the employee has a primary duty of making sales. . . .
>
> Several factors should be considered in determining if a driver has a primary duty of making sales . . . .[32]

---

[28] Former 29 C.F.R. § 541.505(a).

[29] WAC 296-128-540(2). The 20 percent limitation has been removed from the federal regulations. *See* 29 C.F.R. § 541.500. The former federal regulation interpreted the 20 percent limitation to mean no more than 8 hours in a 40-hour work week. Former 29 C.F.R. § 541.507 (2003).

[30] Former 29 C.F.R. § 541.507; *Ackerman v. Coca-Cola Enters., Inc.*, 179 F.3d 1260 (10th Cir. 1999); *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409 (5th Cir. 1975); *Klages*, 435 F.2d at 382-84; *Hodgson v. Krispy Kreme Doughnut Co.*, 346 F. Supp. 1102 (M.D.N.C. 1972); *Hodgson v. Greene's Propane Gas Serv., Inc.*, 1971 U.S. Dist. LEXIS 14602, 64 Lab. Cas. (CCH) ¶ 32,455 (M.D. Ga. 1971), *aff'd*, 71 Lab. Cas. (CCH) ¶ 32,907 (5th Cir. 1973).

[31] Former 29 C.F.R. § 541.505(a).

[32] 29 C.F.R. § 541.504(a)-(b).

The term "primary duty" means the principal, main, major, or most important duty that the employee performs.[33]

But the primary duty test is intensely fact specific, and federal cases conflict in its application. Two such cases, *Hodgson v. Greene's Propane Gas Serv., Inc.*[34] and *Hodgson v. Klages Coal & Ice Co.*,[35] illustrate the conflict.

¶18 In *Greene's Propane*, "routemen" were responsible for servicing existing customers on an established route by refilling propane tanks and finding new customers through door-to-door solicitation.[36] New routes would be opened often, and the routeman's job was to build patronage on the new route.[37] During the winter months, the majority of the routeman's time was spent filling tanks; in the slow summer months, the major task was soliciting new customers.[38] Although the court did not dispute the contention that the routemen spent far less than 80 percent of their time doing sales work, it was concerned with the "quandary" in which this placed employers:

> His initial salesmen would be outside salesmen and thus exempt from the Act. But, once the initial salesmen terminated their employment, their replacements would not be exempt—at least until such time as their sales activities, as defined by the Secretary, surpassed 80% of their total activities.[39]

The court found it "[h]ighly significant" that "the routeman is the only contact with the customer, no other salesman preceding him."[40] It also noted that the propane business

---

[33] 29 C.F.R. § 541.700(a).

[34] 1971 U.S. Dist. LEXIS 14602, 64 Lab. Cas. (CCH) ¶ 32,455 (M.D. Ga. 1971), *aff'd*, 71 Lab. Cas. (CCH) ¶ 32,907 (5th Cir. 1973).

[35] 435 F.2d 377 (6th Cir. 1970).

[36] *Greene's Propane*, 1971 U.S. Dist. LEXIS 14602, at *12-14.

[37] *Greene's Propane*, 1971 U.S. Dist. LEXIS 14602, at *17.

[38] *Greene's Propane*, 1971 U.S. Dist. LEXIS 14602, at *16.

[39] *Greene's Propane*, 1971 U.S. Dist. LEXIS 14602, at *35 n.15.

[40] *Greene's Propane*, 1971 U.S. Dist. LEXIS 14602, at *38.

was "highly competitive" and that good service was the key to sales:

> Thus, any and all activities engaged in by the routeman which is an element of providing "good service" must be considered as sales activity directly promoting the sales of his employer's product.[41]

*Greene's Propane* held that the workmen were exempt outside salesmen.[42]

¶19 In *Klages*, the route workers' primary responsibility was restocking quantities of product to preestablished levels.[43] The court found "no evidence that routemen participate in or influence the initial decision to buy or the volume of purchases."[44] Although there was no contractual prearrangement for quantities or types of product to be delivered, the workers often solicited customers for more shelf space, attempted to obtain new customers along their routes, and engaged in promotional work. The court concluded: "Finally, it cannot be said on the evidence that the regular job of the routemen was to open up new accounts."[45] Thus, the routemen were not exempt workers under the Fair Labor Standards Act.[46]

¶20 The reasoning in *Greene's Propane* is not persuasive. That court concluded that it would overburden Greene's, an employer in a competitive industry, to either divide the duties of driver and salesman or to classify its driver-salesmen based on their actual percentage of sales activity. But most industries are competitive, and intense business competition cannot excuse compliance with remedial wage and hour laws. Also, the court did not explain how simply refilling the tank of an established customer is "making sales." The court in *Greene's Propane* fails to explain how

---

[41] *Greene's Propane*, 1971 U.S. Dist. LEXIS 14602, at *40-41.

[42] *Greene's Propane*, 1971 U.S. Dist. LEXIS 14602, at *45.

[43] *Klages*, 435 F.2d at 379-80.

[44] *Klages*, 435 F.2d at 383.

[45] *Klages*, 435 F.2d at 384.

[46] *Klages*, 435 F.2d at 384.

the importance of maintaining customer loyalty through good service transforms a serviceman into a salesman.

¶21 The most salient point in *Greene's Propane* is that the outside salesman exemption was designed to address the problem of how to track the hours of salesmen who work away from the employer's place of business, without supervision, where the "employer has no way of knowing the number of hours he works per day."[47] Indeed, this is true of a salesman, who chooses when and where to make sales calls and has discretion over the length and number of sales presentations each day. But here, given the rigid structure of the Farmer Brothers route cards; the constant use of hand-held computers that are directly linked to the main branch computer to log stops and invoices; computerized trip planning, including the number and time of stops each day; twice-weekly downloads of detailed stop information, geographical constraints; and fixed duties to perform at each stop, it would be a relatively simple matter for Farmer Brothers to verify timesheets.

¶22 We find the *Klages* case reasoning to be more persuasive. It is factually similar to this case and applies the primary duty test directly to the workers' daily activities, without straying into esoteric concepts such as selling via good service or whether the market is too competitive to require compliance with federal law. The *Klages* court examined whether drivers were servicemen first and salesmen second, or vice versa.

¶23 RSRs are primarily servicemen and secondarily salesmen and are not exempt under the Minimum Wage Act. Their duty is to deliver products in prearranged quantities to established customers, many of whom are large corporate accounts. If the RSRs are efficient enough, they must try to sell extra products or find new customers within the leftover time. Although RSRs fulfill other elements of the outside sales exemption (working away from Farmer Brothers' premises, being paid a salary with com-

---

[47] *Greene's Propane*, 1971 U.S. Dist. LEXIS 14602, at *39.

missions on products sold, being advised of their status as outside salesmen), the issue of whether they are employed for the purpose of making sales is dispositive. They are not, and so are not exempt.

¶24 Farmer Brothers next argues that servicing of established customers is actually incidental to making sales and should be counted as exempt work. However, this ignores the plain language of the Washington Administrative Code, which says the work must be "incidental to and in conjunction with the employee's *own* outside sales or solicitations . . . ."[48] Serving established customers does not fit this description. An RSR worker does not have to make any sales to do his job, although he is encouraged to do so. Sales and solicitations are incidental to service. RSRs are not exempt salesmen.

Overtime Hours Worked Outside of Washington State

■ ¶25 Farmer Brothers argues that even if overtime pay is due to its driver salesmen, hours worked outside of Washington State do not qualify, citing WAC 296-128-011 through -012[49] and *Bostain v. Food Express, Inc.*[50] But those Washington Administrative Codes and *Bostain* apply only

---

[48] WAC 296-128-540(2) (emphasis added).

[49] The relevant portions of the regulations read:

**Special recordkeeping requirements.** (1) In addition to the records required by WAC 296-128-010, employers who employ individuals as truck or bus drivers subject to the provisions of the Federal Motor Carrier Act shall maintain records indicating the base rate of pay [and] the overtime rate of pay. . . . For the purposes of this section and WAC 296-128-012 . . . "[o]vertime rate of pay" means the amount of compensation paid for hours worked within the state of Washington in excess of forty hours per week and shall be at least one and one-half times the base rate of pay.

WAC 296-128-011(1).

**Overtime for truck and bus drivers.** (1)(a) The compensation system under which a truck or bus driver subject to the provisions of the Federal Motor Carrier Act is paid shall include overtime pay at least reasonably equivalent to that required by RCW 49.46.130 for working within the state of Washington in excess of forty hours a week. . . .

WAC 296-128-012.

[50] 127 Wn. App. 499, 111 P.3d 906 (2005), *review granted*, 156 Wn.2d 1010, 132 P.3d 145 (2006).

to truck and bus drivers who are subject to the provisions of the federal Motor Carrier Act, 49 U.S.C. §§ 31501-31504.[51] There is no contention that Farmer Brothers drivers are in this category. Farmer Brothers argues that other states' statutes and the Fair Labor Standards Act may govern the overtime rate of pay for any hours worked outside Washington. This may be true, but the parties have not briefed this issue. Farmer Brothers takes the position that because the Washington Minimum Wage Act does not apply to out-of-state-hours, the three employees in the plaintiff class who worked out of state should receive no overtime whatsoever.

¶26 WAC 296-128-010, which applies to workers other than those covered by the Motor Carrier Act, does not make any exception for overtime hours worked outside of Washington State.[52] Also, the enabling statute does not refer to hours worked inside the state but to "employment within the state of Washington."[53] Farmer Brothers operates a business in Washington, hires workers in Washington, serves customers in Washington, and employs workers within this state. If employees are not exempt, then overtime must be

---

[51] WAC 296-128-011 through -012; *see Bostain*, 127 Wn. App. at 509. *Bostain* contains the overly broad statement that, based on the "plain meaning" of WAC 296-128-011(1), "the minimum wage act applies only to those hours an employee works within the state." *Bostain*, 127 Wn. App. at 506. This statement fails to specify that WAC 296-128-011 applies only to workers covered by the Motor Carrier Act, which covered the workers in *Bostain*. This holding is currently under review by our Supreme Court at 156 Wn.2d 1010, 132 P.3d 145 (2006).

[52]

**Records required.** For all employees who are subject to RCW 49.46.020, employers shall be required to keep and preserve payroll or other records containing the following information and data with respect to each and every employee to whom said section of said act applies:

. . . .

(7) Total daily or weekly straight-time earnings or wages; that is, the total earnings or wages due for hours worked during the workday or workweek, including all earnings or wages due during any overtime worked, but exclusive of overtime excess compensation;

(8) Total overtime excess compensation for the workweek; that is, the excess compensation for overtime worked which amount is over and above all straight-time earnings or wages also earned during overtime worked.

. . . .

WAC 296-128-010.

[53] RCW 49.46.005.

paid.[54] Farmer Brothers cites no support for the argument that the three employees who worked out-of-state hours should get no overtime pay for those hours whatsoever. In the absence of argument and evidence that another overtime provision applies, the trial court's ruling that overtime should be paid under the Washington Minimum Wage Act is proper.

## Method of Calculating Attorney Fees at Trial

¶27 Miller cross-appeals, arguing that attorney fees for the class should have been calculated using counsel's current, as opposed to historical, billing rates. He argues that public policy favors encouraging attorneys to take public interest cases on a contingency fee basis and that using current rates helps to offset the attorney's loss of use of money pending final resolution. Miller must demonstrate a manifest abuse of discretion by the trial court.[55] Moreover, outside of the civil rights context, courts applying the lodestar method should apply contemporaneous rates actually employed, rather than current or contemporaneous rates adjusted for inflation.[56]

¶28 The trial court did not abuse its discretion when it rejected Miller's arguments. The court articulated its reasons for using historical rates: reasonable compensation was paid; and counsel faced no extraordinary legal issues, factual matters, or risk factors. The record supports this reasoning. Although the outside salesman exemption is not discussed in Washington case law, Miller had substantial federal guidance on the matter. Also, the facts were largely undisputed, and this case was appropriately decided upon summary judgment.

## Attorney Fees on Appeal

¶29 Pursuant to RAP 18.1 and RCW 49.48.030, as the prevailing party, Miller is awarded his requested

---

[54] RCW 49.46.130(1).

[55] *Boeing Co.*, 108 Wn.2d at 65.

[56] *Mahler v. Szucs*, 135 Wn.2d 398, 434, 957 P.2d 632 (1998).

attorney fees on appeal.[57] However, he will not receive fees incurred in connection with his cross-appeal, on which he did not prevail.[58]

¶30 Affirmed.

BECKER and DWYER, JJ., concur.

---

[57] *Kohn v. Georgia-Pacific Corp.*, 69 Wn. App. 709, 727, 850 P.2d 517 (1993).

