153 P.3d 846 (2007)
Larie E. BOSTAIN and Laurie Jo Bostain, husband and wife, Petitioners,
v.
FOOD EXPRESS, INC., an unregistered corporation; and Mark Widing, a single man, Respondents.
No. 77201-1.
Supreme Court of Washington, En Banc.
Argued May 18, 2006.
Decided March 1, 2007.
*848 James F. Gray, Law Offices of James F. Gray, Vancouver, WA, for Petitioners.
Dale Halverson Schofield, Portland, OR, for Respondents.
Amanda J. Goss, Attorney General Office, Seattle, WA, for Amicus Curiae on behalf of State Dept of Labor and Industries.
Philip Albert Talmadge, Talmadge Law Group PLLC, Tukwila, WA, for Amicus Curiae on behalf of American Trucking Associations, Inc., WA Trucking Associations.
Martin S. Garfinkel, Schroeter Goldmark & Bender, Jeffrey Lowell Needle, Seattle, WA, for Amicus Curiae on behalf of Washington Employment Lawyers Association.
MADSEN, J.
¶ 1 Petitioners Larie E. and Laurie Jo Bostain seek reversal of a Court of Appeals' decision holding that Mr. Bostain is not entitled to overtime pay for work as an interstate truck driver because although he worked in excess of 40 hours per week, he did not work more than 40 hours a week within the state of Washington. The Bostains maintain that Mr. Bostain's employer, respondent Food Express, Inc., is liable to Mr. Bostain under Washington's Minimum Wage Act (MWA), chapter 49.46 RCW, for overtime based on all hours worked, whether within Washington State or outside the state. We agree. By definition, an interstate trucker will spend some hours driving outside Washington State. RCW 49.46.130(1) requires overtime compensation for interstate truck drivers. The statute makes no distinction between the hours spent driving in state and those spent driving outside Washington. Accordingly, we reverse the Court of Appeals.

*849 FACTS
¶ 2 Food Express employed Mr. Bostain as a truck driver for almost 10 years before his employment was terminated on May 28, 2002. Food Express, a California corporation headquartered in Arcadia, California, is a motor carrier subject to the Federal Motor Carrier Act (FMCA), 49 U.S.C. §§ 31501-31504. It hauls food products between points in several western states. Food Express's Washington operations include a terminal in Vancouver, Washington, out of which approximately 25 trucks operate. Food Express also owns property in Fruit Valley, Washington, a short distance from the Vancouver terminal where it has its truck wash plant, shop, yard, and maintenance facilities. Food Express has a few trucks parked in the Seattle area and other trucks in other Washington locations. The Washington operations principally involve picking up container loads of bulk products shipped into Washington by rail and delivering them to places in Washington, Oregon, and Idaho.
¶ 3 Mr. Bostain was hired by Food Express on August 6, 1992, as an interstate truck driver based at the Vancouver terminal. Bostain lived in Clark County, Washington, and worked out of the Vancouver terminal the entire time he worked for Food Express. Dispatchers at the terminal gave him his orders, and he began and ended his runs there. He also turned in his time and picked up his paychecks, which were issued from the Arcadia office, at the Vancouver terminal. He drove with a Washington driver's license.
¶ 4 Food Express paid Bostain an hourly wage, but if he drove over 200 miles it paid him by the mile. Food Express told Bostain when he was hired that because he would be driving interstate he would not receive overtime. Bostain was never paid overtime and did not complain about this until after Food Express fired him for violating federal driving time limitations.[1] A log audit of Bostain's final year of work for Food Express showed that Bostain averaged 48 working hours per week but that he never worked more than 40 hours in a week within Washington.[2] He spent 37 percent of his driving time in Washington and 63 percent out of state.
¶ 5 On December 3, 2002, the Bostains brought this suit for unpaid overtime, unpaid wages, and willful failure to pay wages. They also sought attorney fees pursuant to RCW 49.46.090(1), RCW 49.48.030, and RCW 49.52.070. The trial court granted summary judgment to the Bostains, ruling that truck drivers are entitled to overtime pay under the MWA if they are employed in Washington but spend some of their driving time outside the state. The trial court also granted attorney fees under RCW 49.46.090(1) and RCW 49.48.030. The court entered judgment against Food Express of $9,846.64 for unpaid overtime wages, $3,236.21 in prejudgment interest, and $15,000 for attorney fees, determined below the lodestar and without a multiplier.
¶ 6 Food Express appealed. The Bostains cross-appealed, contending that they should be awarded double damages under RCW 49.52.070 and that the trial court should have awarded a larger amount for attorney fees. The Court of Appeals reversed, holding that Mr. Bostain was not entitled to overtime for hours worked outside Washington State. Bostain v. Food Express, Inc., 127 Wash. App. 499, 111 P.3d 906 (2005), review granted, 156 Wash.2d 1010, 132 P.3d 145 (2006). In light of this holding, the Court of Appeals did not reach the issue of attorney fees. We granted the Bostains' petition for discretionary review. Amicus curiae briefs have been filed by the Washington Trucking Associations/American Trucking Associations, Inc. and the Washington Employment Lawyers Association.[3]

*850 ANALYSIS
¶ 7 Review of a grant of summary judgment is de novo. Korslund v. DynCorp Tri-Cities Servs., Inc., 156 Wash.2d 168, 177, ¶ 12, 125 P.3d 119 (2005); Berrocal v. Fernandez, 155 Wash.2d 585, 590, ¶ 5, 121 P.3d 82 (2005). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Korslund, 156 Wash.2d at 177, ¶ 12, 125 P.3d 119; Berrocal, 155 Wash.2d at 590, ¶ 5, 121 P.3d 82. Facts and reasonable inferences therefrom are viewed most favorably to the nonmoving party. Korslund, 156 Wash.2d at 177, ¶ 12, 125 P.3d 119; Berrocal, 155 Wash.2d at 590, ¶ 5, 121 P.3d 82. Summary judgment is proper if reasonable minds could reach only one conclusion from the evidence presented. Korslund, 156 Wash.2d at 177, ¶ 12, 125 P.3d 119; Berrocal, 155 Wash.2d at 590, ¶ 5, 121 P.3d 82.
¶ 8 The Bostains contend that the Court of Appeals erroneously concluded that the MWA's overtime provision applies only to work performed within Washington State.
¶ 9 Questions of statutory interpretation are questions of law that are reviewed de novo. Id.; Fluor Hanford, Inc. v. Hoffman, 154 Wash.2d 730, 737, ¶ 5, 116 P.3d 999 (2005). Our goal is to effectuate the legislature's intent. State v. Jacobs, 154 Wash.2d 596, 600, ¶ 7, 115 P.3d 281 (2005). If the statute's meaning is plain, we give effect to that plain meaning as the expression of the legislature's intent. Id. Plain meaning is determined from the ordinary meaning of the language used in the context of the entire statute in which the particular provision is found, related statutory provisions, and the statutory scheme as a whole. Id. If, however, the statutory language is susceptible to more than one reasonable interpretation, it is ambiguous and we resolve the ambiguity by resort to other indicia of legislative intent, including legislative history, and, if necessary, we then apply principles of statutory construction to resolve any remaining ambiguity. See id.
¶ 10 Subject to specific exemptions, the MWA requires employers to pay their employees (as the act defines "employees") overtime pay for the hours they work over 40 hours per week. RCW 49.46.130; Drinkwitz v. Alliant Techsystems, Inc., 140 Wash.2d 291, 299, 301, 996 P.2d 582 (2000). RCW 49.46.130(1) states that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation" for hours worked over 40 hours "at a rate not less than one and one-half times the regular rate at which he is employed." One exemption from this rule applies to interstate bus or truck drivers who are subject to the FMCA, provided that "the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to that required by this subsection, for working longer than forty hours per week." RCW 49.46.130(2)(f).[4]
¶ 11 The Bostains maintain that RCW 49.46.130(1) unambiguously requires that overtime must be paid unless a specific exemption applies. They contend that the exemption in subsection (2)(f) does not apply because Mr. Bostain did not receive compensation "reasonably equivalent" to the overtime required under RCW 49.46.130(1), and therefore the administrative rules that the Court of Appeals utilized as aids to interpreting the statute do not apply because these rules pertain only to drivers who are paid "reasonably equivalent" compensation. Food Express contends, however, that the Court of *851 Appeals properly considered language in RCW 49.46.005 and two administrative rules promulgated by the Department of Labor and Industries, WAC 296-128-011 and WAC 296-128-012, in arriving at the conclusion that only hours worked in Washington are considered for purposes of determining whether overtime must be paid.
¶ 12 On its face, RCW 49.46.130(1) does not limit the requirement for overtime pay to hours worked in Washington, nor does it do so specifically for truck drivers subject to the FMCA. The statute contemplates that in general truck drivers will receive overtime pay, evidenced by the fact that the exemption in (2)(f) applies only if the driver obtains overtime or its reasonable equivalent. That is, whether paid under the time-and-a-half provisions of RCW 49.46.130(1) or by "reasonably equivalent" compensation, the statute mandates that truck drivers must obtain extra compensation for hours worked over 40 hours per week. Moreover, by writing the exemption in RCW 46.49.130(2)(f) as it did, the legislature recognized that truck drivers are subject to the overtime provisions of RCW 49.46.130(1) even though they spend part of their time engaged in interstate transportation.
¶ 13 This is because if a worker is subject to the FMCA, by definition he or she performs some of his or her work in interstate trucking and thus out of state. See 49 U.S.C. § 31502(a)(1) (formerly 49 U.S.C. § 3102) (act applies to motor carriers transporting people or property between one state and another, or within the same state if the route transverses another state).
¶ 14 The plain language of RCW 49.46.130(1) requires overtime compensation for hours worked over 40 per week for interstate driving, with no suggestion in the statute that there is a requirement that only hours worked within this state may be considered.
¶ 15 We must, of course, read the statute in conjunction with other relevant provisions in chapter 49.46 RCW. See, e.g., Jacobs, 154 Wash.2d at 600, ¶ 7, 115 P.3d 281. Food Express maintains, and the Court of Appeals held, that RCW 49.46.005 must be read together with RCW 49.46.130, and RCW 49.46.005 provides that the overtime provisions of RCW 49.46.130 apply only to hours worked within Washington State.
¶ 16 RCW 49.46.005 states:
Whereas the establishment of a minimum wage for employees is a subject of vital and imminent concern to the people of this state and requires appropriate action by the legislature to establish minimum standards of employment within the state of Washington, therefore the legislature declares that in its considered judgment the health, safety and the general welfare of the citizens of this state require the enactment of this measure, and exercising its police power, the legislature endeavors by this chapter to establish a minimum wage for employees of this state to encourage employment opportunities within the state. The provisions of this chapter are enacted in the exercise of the police power of the state for the purpose of protecting the immediate and future health, safety and welfare of the people of this state.
(Emphasis added.)
¶ 17 Contrary to the Court of Appeals' conclusion, we do not agree that references in RCW 49.46.005 to employment within the state of Washington mean that overtime must be paid only with respect to total hours worked within the state's borders. Rather, the legislature's policy declaration in RCW 49.46.005 describes the purpose of the MWA and speaks to the importance of minimum wage protections for Washington employees in order to encourage Washington employment opportunities. The act's purpose does not depend on the work itself being performed within this state.
¶ 18 Moreover, the pertinent references in the statute are similar to those we addressed in Burnside v. Simpson Paper Co., 123 Wash.2d 93, 99, 864 P.2d 937 (1994), where an employer argued that an employee could not sue the employer under the Washington Law Against Discrimination (WLAD) because RCW 49.60.010 provides that the purpose of the act is to prevent discrimination against any of the state's "inhabitants" and the employee was not an "inhabitant." We rejected this argument because the fundamental *852 purpose of the WLAD is to prevent discrimination, and limiting the act to inhabitants would contravene that purpose by allowing discrimination against noninhabitants. Here, the purposes of the MWA would be contravened if RCW 49.46.005 is construed to exempt Washington-based employees who work out of state.
¶ 19 Moreover, "[s]tatutes should be interpreted to further, not frustrate, their intended purpose." Burnside, 123 Wash.2d at 99, 864 P.2d 937. Washington has a "long and proud history of being a pioneer in the protection of employee rights." Drinkwitz, 140 Wash.2d at 300, 996 P.2d 582. A restrictive reading of the declaration section and overtime provisions of the MWA would be inconsistent with protecting workers and, specifically, would be inconsistent with the protections afforded Washington employees under the MWA. See Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wash.2d 29, 34, 35, 42 P.3d 1265 (2002) (remedial statutes in Title 49 RCW should be liberally construed to carry out the legislature's goal of protecting employees' wages and assuring payment).
¶ 20 Finally, we must bear in mind that the act is remedial and its exemptions must be "narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation." Drinkwitz, 140 Wash.2d at 301, 996 P.2d 582; accord Strain v. W. Travel, Inc. 117 Wash.App. 251, 254, 70 P.3d 158 (2003). Interpreting the word "hours" in RCW 49.46.130(1) and (2)(f) to mean "hours worked in Washington State" is neither plainly nor unmistakably consistent with the language in RCW 49.46.130(1) or the spirit of the MWA's minimum wage levels for Washington employees. Additionally, the rule of liberal construction means that the coverage provisions of the MWA must be liberally construed in favor of the employee. Int'l Ass'n of Fire Fighters, 146 Wash.2d at 34, 42 P.3d 1265.
¶ 21 Considering the plain language of RCW 49.46.130(1), RCW 49.46.130(2)(f), and RCW 49.46.005, we conclude that the trial court correctly determined that all hours of work must be considered, whether worked within this state or not, when determining overtime due a Washington employee. Here, Mr. Bostain was a Washington employee. Under RCW 49.46.130(1) he is entitled to overtime for the hours he worked in excess of 40 per week.[5]
¶ 22 Normally we would end the analysis here because the statutes unambiguously require overtime in the circumstances here. However, Food Express maintains, and the Court of Appeals held, that two administrative rules demand a different result. The short answer to this claim is that even if the administrative rules provide that for overtime purposes "hours worked" means "hours worked in Washington," they do not alter the analysis because an administrative rule is invalid and unenforceable if it contravenes the statute which it implements.
¶ 23 The two rules at issue are WAC 296-128-011 and WAC 296-128-012. These rules were adopted in 1989, the same year that the exemption in RCW 49.46.130(2)(f) was enacted. This statutory provision and these administrative rules were responses to this court's holdings in Department of Labor & Industries v. Common Carriers, Inc., 111 Wash.2d 586, 762 P.2d 348 (1988), (a) that the FMCA does not preempt Washington's MWA and (b) that the overtime provisions of the MWA apply to employees of an interstate trucking company. Prior to Common Carriers, the Department had required that overtime was due only if the employee worked over 50 percent of the time in Washington. See Dep't of Labor & Indus. v. Overnite Transp. Co., 67 Wash.App. 24, 32-33, 834 P.2d 638 (1992). The Court of Appeals subsequently explained that in Common Carriers this court "applied the overtime provisions of the WMWA to interstate motor carriers without reference to the percent of time an employee worked in Washington." Id.
*853 ¶ 24 WAC 296-128-011, titled "Special recordkeeping requirements," provides that employers employing truck drivers subject to the FMCA "shall maintain records indicating the base rate of pay, the overtime rate of pay, the hours worked by each employee for each type of work, and the formulas and projected work hours used to substantiate any deviation from payment on an hourly basis." The WAC additionally provides that "[f]or the purposes of this section . . . time rate of pay' means the amount of compensation paid for hours worked within the state of Washington in excess of forty hours per week and shall be at least one and one-half times the base rate of pay." WAC 296-128-011(1) (emphasis added). The rule also provides that "[t]he records required by this section shall be made available" at the request of the Department of Labor and Industries and that employees and job applicants may obtain an employer's formula, base rate of pay, and overtime rate of pay. WAC 296-128-011(2).
¶ 25 WAC 296-128-012 implements RCW 49.46.130's requirement that the compensation scheme for a driver subject to the FMCA must include overtime pay at least reasonably equivalent to that required by the statute. The part of the rule heavily relied on by Food Express states that this overtime pay is for "working within the state of Washington in excess of forty hours a week." WAC 296-128-012(1)(a) (emphasis added). The rule contains detailed instructions for how to meet the "reasonably equivalent" compensation requirement and a formula for use in substantiating "any deviation from payment on an hourly basis." Id. The rule refers to work within the state several times, each time in conjunction with rates of pay and permissible formulas for equivalent compensation.
¶ 26 As mentioned, the Bostains contend these two administrative rules apply only where the employer pays overtime in the form of "reasonably equivalent" compensation. Because Mr. Bostain was not paid reasonably equivalent compensation, they reason, the Court of Appeals should not have applied the definition of hours worked found in WAC 296-128-011. Food Express complains, however, that if the rules are applied only where the employer uses a "reasonably equivalent" form of compensation for overtime, workers will be treated differently under the Bostains' theory. That is, workers will receive different pay arrangements solely because their employers utilize a different method of payment.
¶ 27 We reject both of these arguments. Contrary to the Bostains' contention, WAC 296-128-011 contains nothing that limits its application to workers who are paid under a "reasonably equivalent" compensation scheme of overtime. Contrary to Food Express's contention, a holding that Mr. Bostain is entitled to overtime compensation does not require different treatment of workers paid on an hourly basis for both base pay and overtime and workers whose overtime is calculated under a "reasonably equivalent" compensation method. Instead, a worker must be paid an amount equal to one and one-half times the hourly rate or be provided reasonably equivalent compensation. Thus, the workers must receive overtime pay that is commensurate.
¶ 28 Moreover, and more importantly, rules that are inconsistent with the statutes they implement are invalid. An agency's rule is invalid if it is not reasonably consistent with the statute being implemented. See, e.g., Campbell v. Dep't of Soc. & Health Servs., 150 Wash.2d 881, 892, 83 P.3d 999 (2004). The Department's rules defining hours for purposes of overtime provisions as hours worked within Washington's borders are not consistent with the plain language of the statutes being implemented, nor with the stated purposes of the MWA, nor with the principles that apply to interpretation of remedial legislation governing payment of wages in this state, as explained above.
¶ 29 The Department of Labor and Industries argued to the Court of Appeals, however, that the trial court should have followed the agency's regulation defining hours as those worked in Washington because while the statutes do not explicitly address the location of hours worked, the Department has addressed this issue and therefore its rule should be followed. Further, the Department maintains, the legislature "has *854 demonstrated its approval" by not changing the agency's approach. Br. of Amicus Curiae Dep't of Labor & Indus. at 6.
¶ 30 This court has the ultimate authority to interpret a statute, and deference is accorded an agency's interpretation only if (1) the particular agency is charged with the administration and enforcement of the statute, (2) the statute is ambiguous, and (3) the statute falls within the agency's special expertise. See Edelman v. State ex rel. Pub. Disclosure Comm'n, 152 Wash.2d 584, 590, 99 P.3d 386 (2004); Port of Seattle v. Pollution Control Hr'g's Bd., 151 Wash.2d 568, 587, 90 P.3d 659 (2004); Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology, 146 Wash.2d 778, 790, 51 P.3d 744 (2002); Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council, 129 Wash.2d 787, 799, 920 P.2d 581 (1996); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813-14, 828 P.2d 549 (1992). Here, we conclude that RCW 49.46.130(1) and (2)(f) are not ambiguous with regard to hours worked for purposes of determining when overtime compensation is due. Accordingly, no deference is due the agency's interpretation, regardless of whether it is stated in an agency rule.[6] Moreover, deference to an agency's interpretation is never appropriate when the agency's interpretation conflicts with a statutory mandate, and "legislative acquiescence can never be interpreted as permission to ignore or violate statutory mandates." Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 812, 16 P.3d 583 (2001). Thus, the fact that the legislature has not acted to correct the Department's rule is irrelevant.[7]
¶ 31 Next, the parties have debated the effect of the decisions in Overnite Transportation and Common Carriers. In Common Carriers, although we noted that the employee worked entirely within Washington, we did not base our holdings that the MWA is not preempted by the FMCA and that the MWA applies to interstate truckers on that fact.[8] In Overnite Transportation the Court of Appeals held that the MWA was not preempted by the FMCA (rejecting the arguments that Common Carriers was distinguishable or incorrect); that the MWA did not violate the commerce clause; and that the Department of Labor and Industries did not violate the Administrative Procedure Act when it adopted the rule applying the MWA to interstate motor carriers. The parties in Overnite Transportation stipulated that the employees were employed within the state and were not paid overtime. Overnite Transp., 67 Wash.App. at 28, 834 P.2d 638. Neither case controls or precludes our holding here that the WMA unambiguously requires that overtime be paid to a Washington employee based on all hours worked.
¶ 32 Next, we discuss Food Express's claim that if RCW 49.46.130 is interpreted to apply to all hours worked, it violates the commerce clause. A claim that a statute is unconstitutional must be proven by the challenger beyond a reasonable doubt. State v. Heckel, 143 Wash.2d 824, 832, 24 P.3d 404 (2001). The commerce clause grants Congress the power to regulate interstate *855 commerce. U.S. Const. art. I, § 8, cl. 3. Implicit in this grant of power is the "dormant" commerce clause, i.e., the premise that a state intrudes on this power if it enacts a law that unduly burdens interstate commerce. Heckel, 143 Wash.2d at 832, 24 P.3d 404. "`This "negative" aspect of the Commerce Clause prohibits economic protectionism  that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" W. Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 192, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) (quoting New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273-74, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988)).
¶ 33 The initial question is whether the state law affecting interstate commerce "facially regulates or discriminates against interstate commerce, or has the direct effect of favoring in-state economic interests over out-of-state interests." Mt. Hood Beverage Co. v. Constellation Brands, Inc., 149 Wash.2d 98, 110, 63 P.3d 779 (2003) (citing Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578-79, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986)). A state law affecting interstate commerce that does neither of these things is generally upheld unless it places a burden on interstate commerce that outweighs the benefits from the law: where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved and on whether it could be promoted as well with a lesser impact on interstate activities. Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).
¶ 34 As interpreted to include hours worked both in and out of state, RCW 49.46.130 is not facially discriminatory because it does not openly discriminate against interstate commerce in favor of intrastate economic interests. Nor does the statute have a direct effect of favoring in-state interests; rather, it treats both evenhandedly. See Heckel, 143 Wash.2d at 833, 24 P.3d 404.
¶ 35 Accordingly, we turn to the balancing test required under Pike. Assuring proper compensation for Washington employees is an important legitimate local interest served by the overtime provisions of the MWA. See RCW 49.46.005 (MWA purpose is to establish minimum standards of employment and to encourage employment opportunities within Washington State); see also, e.g., Int'l Ass'n of Fire Fighters, 146 Wash.2d at 35, 42 P.3d 1265 (statutes in Title 49 RCW should be liberally construed to carry out the legislature's goal of protecting employees' wages and assuring payment); Drinkwitz, 140 Wash.2d at 300, 996 P.2d 582 (noting State's long history of protecting employees' rights and the legislature's concern for the welfare of Washington's work force).
¶ 36 Food Express has offered no persuasive argument that this local interest is outweighed by any burden on interstate commerce, and we perceive none. In relevant part, the MWA regulates only employers who are doing business in Washington and who have hired Washington-based employees. Employers will need to identify those employees who are subject to Washington's MWA and keep track of total hours, but we do not believe either of these requirements constitutes an impermissible burden on interstate commerce.
¶ 37 Two additional components of the analysis are whether the state law creates inconsistency among the states and whether the statute regulates conduct occurring wholly out of the state. Heckel, 143 Wash.2d at 837, 24 P.3d 404. The inconsistent-regulations test and the extraterritoriality analysis are facets of the Pike test above. Id. at 838, 24 P.3d 404. As to the first of these components, if the law in question merely creates additional but not irreconcilable obligations, they are not to be considered inconsistent for dormant commerce clause analysis. Id. (citing Instructional Sys., Inc. v. Computer Curriculum Corp., 35 F.3d 813, 826 (3d Cir. 1994)). Rather, if the states have enacted different overtime statutes, the question is whether this "create[s] compliance costs that *856 are `clearly excessive in relation to the putative local benefits.'" Heckel, 143 Wash.2d at 838, 24 P.3d 404 (quoting Pike, 397 U.S. at 142, 90 S.Ct. 844).
¶ 38 Food Express has not established that MWA's overtime provisions create irreconcilable obligations. The Bostains, on the other hand, make a strong argument that if an employer is subject to the MWA for an employee's wages, that employer would not be required, under a choice of laws analysis, to comply with another state's wage and hour statutes as to that employee.
¶ 39 As to extraterritoriality, the United States Supreme Court has invalidated statutes that regulate the out-of-state conduct of business. For example, in Edgar v. MITE Corp., 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), the Court found unconstitutional an Illinois law that regulated, beyond its borders, tender offers for the purchase of stock in corporations. In two cases the Court has found violations of the commerce clause where state laws had the practical effect of controlling the price of alcoholic beverages in other states. Brown-Forman Distillers, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552; Healy v. Beer Institute, 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989).
¶ 40 Here, the Bostains point out, overtime under the MWA applies to Washington-based employees, and it is difficult to conceive of circumstances where one who does not qualify as the employer of a Washington-based employee would be subject to the MWA's overtime pay regulations. In Haberman v. Washington Public Power Supply System, 109 Wash.2d 107, 744 P.2d 1032, 750 P.2d 254 (1987) we rejected a commerce clause challenge to the Securities Act of Washington (WSSA), chapter 21.20 RCW. We noted, among other things, that the "application of the WSSA . . . is based on the substantial relationship between the subject matter, the parties, and the forum state" and there was no attempt to apply the state law "to transactions completely unrelated to Washington." Haberman, 109 Wash.2d at 135-36, 750 P.2d 254. The same is true here. Food Express has shown no "`sweeping extraterritorial effect' that would outweigh the local benefits" of the MWA. Heckel, 143 Wash.2d at 839, 24 P.3d 404 (quoting Edgar, 457 U.S. at 642, 102 S.Ct. 2629).
¶ 41 Finally, we believe that any impact of the MWA on interstate commerce does not rise to the level of an impermissible burden, given the importance of the legitimate local public interest at stake.
¶ 42 Amici curiae Washington Trucking Associations/American Trucking Associations, Inc. contend, however, that application of state laws like the MWA would throw trucking operations into financial turmoil and compromise safety by requiring carriers, because of financial considerations, to adopt artificial hourly limits inconsistent with the carriers' operational needs. These amici also refer to the possibility of inconsistent state regulations respecting driver eligibility for overtime.
¶ 43 We are not convinced that a commerce clause violation occurs when an employer is subject to additional expense, but, even more, we are not convinced that safety is compromised by application of laws like the MWA. The FMCA regulates the total number of hours that a driver can be on the road, assuring that safety concerns are met. As to potentially inconsistent state laws respecting overtime, this claim implicates choice of law questions that routinely arise. As the Bostains maintain, if the employee is a Washington-based employee subject to Washington's MWA, the employer is not likely to be subject to the wage and hour statutes of another jurisdiction with respect to that employee.[9]
*857 ¶ 44 Food Express has not sustained the burden of overcoming the presumption that RCW 49.46.130, as we interpret it here, is constitutional.
¶ 45 Next, we turn to the question of attorney fees. Attorney fees were requested under RCW 49.46.090(1), RCW 49.48.030, and RCW 49.52.070. The trial court calculated fees in the amount of $135 per hour for 170.2 hours, for a total of $22,977, and then reduced the amount to $15,000. The trial court reduced the lodestar amount based on its determinations that there was a bona fide dispute as to whether Food Express was liable for overtime wages, the issues presented in this case are unsettled and are a matter of first impression, and the size of the award for overtime wages. The Bostains maintain these factors do not justify a decrease, and that in particular the first two of these reasons favor an increase in attorney fees rather than a decrease. The Bostains also ask for a 1.5 multiplier.
¶ 46 We agree that the reasons given by the trial court are not factors that support a reduction in the lodestar amount under the facts of this case. See Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 596-99, 675 P.2d 193 (1983). We remand, with directions to the trial court to determine, on remand, whether a multiplier is appropriate, in light of our conclusion that the factors previously relied on do not support a reduction in the lodestar amount.
¶ 47 The Bostains have also requested fees under RCW 49.46.090(1) and RCW 49.48.030 in the Court of Appeals and in this court. We award the Bostains attorney fees under these statutes for the appeal and for this discretionary review, with the amount to be determined by the trial court on remand.
¶ 48 The Bostains seek double damages pursuant to chapter 49.52 RCW. We conclude that the trial court correctly denied this request on the ground that there was a bona fide dispute as to whether the overtime provision in RCW 49.46.130 applies to all hours worked by interstate truck drivers. The trial court said that the law on the issue of out-of-state hours was unsettled, and noted that Food Express had been advised in a February 2003 letter from an employee of the Department of Labor and Industries that no overtime was due to an interstate truck driver who did not work more than 40 hours a week in Washington.
¶ 49 Finally, the parties raised additional issues in the Court of Appeals that were not necessary to that court's decision. Pursuant to RAP 13.7(b), we decide them in this opinion. First, Food Express contends that the award of prejudgment interest is improper because Food Express did not admit liability and the parties dispute the number of hours worked.
¶ 50 The trial court properly awarded prejudgment interest because the claim for overtime was a liquidated claim. A liquidated claim is one where the amount of prejudgment interest can be determined from the evidence with exactness and without reliance on opinion or discretion. Hansen v. Rothaus, 107 Wash.2d 468, 472, 730 P.2d 662 (1986) (citing Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 32, 442 P.2d 621 (1968)). "A dispute over the claim, in whole or in part, does not change the character of a liquidated claim to unliquidated." Hansen, 107 Wash.2d at 472, 730 P.2d 662 (citing Charles T. McCormick, Handbook on the Law of Damages § 54 (1935)). The Bostains *858 submitted objective evidence of the overtime due and the basis for their calculations. Once the determination is made that overtime is due Mr. Bostain, the amount of prejudgment interest can be determined from the evidence with exactness. Accordingly, the trial court did not err in awarding prejudgment interest.
¶ 51 Second, Food Express maintains that the trial court erred in dismissing its affirmative estoppel defense. Food Express's argument on this issue is somewhat unclear, but it seems to be that by accepting pay without overtime for 10 years without complaint, Mr. Bostain is estopped from claiming that Food Express owes any additional amount for overtime. Food Express also claims that the Bostains' suit is in retaliation for his dismissal and evidently believes this is another reason that supports an estoppel defense. Food Express cites no authority that supports its argument, and the Bostains have provided authority to the contrary. See Cannon v. Miller, 22 Wash.2d 227, 238-39, 155 P.2d 500 (1945), overruled on other grounds, Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co., 139 Wash.2d 824, 991 P.2d 1126, 1 P.3d 578 (2000) (fact that employees accepted checks for lesser amounts did not preclude them from collecting amounts due them for overtime under the federal Labor Standards Act, and employer could not assert an estoppel defense because it would permit the employer to relieve itself of liability imposed on the employer because of its violation of the law). Further, Food Express cites no evidence in the record in support of its claim that the Bostains' suit is retaliatory and no authority for the proposition that this would make any difference as to Mr. Bostains' entitlement to overtime.

CONCLUSION
¶ 52 The overtime provisions of RCW 49.46.130 apply to all hours worked by a Washington-based truck driver engaged in interstate transportation, whether within Washington State or outside the state. We reverse the Court of Appeals and remand to the trial court for recalculation of attorney fees due for the trial, and for determination of attorney fees for the appeal and for this discretionary review.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, TOM CHAMBERS, CHARLES W. JOHNSON and MARY E. FAIRHURST, JJ.
J.M. JOHNSON, J., dissenting.
¶ 1 The majority declares that a truck driver who never worked more than 40 hours per week in Washington is entitled to years of overtime for driving in other states: "all hours of work must be considered, whether worked within this state or not, when determining overtime due a Washington employee." Majority at 852. This holding contradicts the plain language of the Washington Minimum Wage Act (MWA), chapter 49.46 RCW, that act's statement of purpose, and an interpretive administrative rule, and runs afoul of the Commerce Clause. The majority's decision also threatens to subject an important industry to the vagaries of a choice of laws analysis regarding a key business decision. Therefore, I must dissent.

I. RELEVANT FACTS AND PROVISIONS OF LAW
¶ 2 For 10 years Food Express, Inc. employed Larie Bostain as an interstate truck driver, driving in the states of Washington, Oregon, Idaho, and California. Majority at 849. Food Express informed Bostain from the beginning of his employment that he would not be entitled to overtime, and Food Express never paid Bostain any overtime wages. Majority at 849.
¶ 3 Years later, having been fired by Food Express for other reasons, Bostain now claims that he is entitled to overtime wages pursuant to RCW 49.46.130(1). Majority at 849. However, our statute, RCW 49.46.130(1), requires overtime only for workers who work over 40 hours per week within the state of Washington. Because the majority reaches a different result, applying Washington law to hours worked in Oregon, Idaho, and California, I dissent.
¶ 4 The statute at issue is RCW 49.46.130, titled "Minimum rate of compensation for employment in excess of forty hour work *859 week  Exceptions." RCW 49.46.130(1) provides that employees who work more than 40 hours per week are entitled to overtime unless a listed exception applies (see full text, infra). Neither this court nor the Court of Appeals has addressed whether RCW 49.46.130(1) requires overtime only where employees have worked more than 40 hours per week within the state of Washington. Two earlier cases considering the statute are not dispositive of this issue. Majority at 854-55. Dep't of Labor & Indus. v. Common Carriers, Inc., 111 Wash.2d 586, 762 P.2d 348 (1988); Dep't of Labor & Indus. v. Overnite Transp. Co., 67 Wash.App. 24, 834 P.2d 638 (1992), review denied, 120 Wash.2d 1030, 847 P.2d 481 (1993).
¶ 5 RCW 49.46.130(1) does not explicitly address whether the "hours" relevant to the determination of overtime compensation are limited to hours worked within the state of Washington. Rather, as evidenced by the conflicting decisions below, RCW 49.46.130(1) is subject to more than one reasonable interpretation on this point. Given this ambiguity, Food Express correctly argues that other sections of the statute and relevant administrative rules may be used to interpret RCW 49.46.130(1).[1] Viewed together, these provisions compel the conclusion that employees must be paid overtime under RCW 49.46.130(1) based only on hours worked within the state of Washington.

II. RULES FOR STATUTORY INTERPRETATION
¶ 6 Statutory interpretation is a question of law that this court reviews de novo. Philippides v. Bernard, 151 Wash.2d 376, 383, 88 P.3d 939 (2004). "The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent and purpose." In re Parentage of J.M.K., 155 Wash.2d 374, 387, 119 P.3d 840 (2005). To reach this goal, this court considers first the plain language of the statute. This analysis includes examination of "the statute as a whole, giving effect to all that the legislature has said, and . . . using related statutes to help identify the legislative intent embodied in the provision in question." Id.
¶ 7 If, after this analysis, the statute is still subject to more than one reasonable interpretation, it is ambiguous. State v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 12, 43 P.3d 4 (2002). In determining legislative purpose and intent of an ambiguous statute, this court may look beyond the language of the act to its legislative history. Id. Useful legislative history materials may include bill reports. State v. Reding, 119 Wash.2d 685, 690, 835 P.2d 1019 (1992). Additionally, in construing an ambiguous statute, this court will "accord great weight to the contemporaneous construction placed upon it by officials charged with its enforcement, especially where the Legislature has silently acquiesced in that construction over a long period." In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 780, 903 P.2d 443 (1995).
¶ 8 While "[a]dministrative agencies do not have the power to promulgate rules that would amend or change legislative enactment[,] . . . [a]gency rules may be used to `fill in the gaps' in legislation if such rules are `necessary to the effectuation of a general statutory scheme.'" Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 646, 62 P.3d 462 (2003) (internal quotation marks and citations omitted) (quoting Green River Cmty. Coll. v. Higher Educ. Pers. Bd., 95 Wash.2d 108, 112, 622 P.2d 826 (1980)). Courts give substantial weight to an agency's interpretation of the statutes it administers. Manke Lumber Co. v. Diehl, 91 Wash.App. 793, 802, 959 P.2d 1173 (1998) (citing Weyerhaeuser Co. v. Dep't of Ecology, 86 Wash.2d 310, 315, 545 P.2d 5 (1976)). Courts should not defer to an agency's interpretation of a statute if that interpretation conflicts with *860 the statutory mandate. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 812, 16 P.3d 583 (2001).
III. INTERPRETATION OF THE OVERTIME PROVISIONS OF THE WASHINGTON MINIMUM WAGE ACT
¶ 9 RCW 49.46.130(1) contains no explicit indication that it is limited in application to employees performing work within the state of Washington, but also indicates no intent to apply to hours worked in other states. RCW 49.46.130(1) provides, in relevant part:
Except as otherwise provided in this section, no employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
¶ 10 While RCW 49.46.130(1) is silent regarding whether an employee must work over 40 hours within the state of Washington to receive overtime pay, RCW 49.46.005 is not silent on this point. RCW 49.46.005 describes the purpose of the entire MWA as follows:
to establish minimum standards of employment within the state of Washington . . . to establish a minimum wage for employees of this state to encourage employment opportunities within the state. . . . for the purpose of protecting the immediate and future health, safety and welfare of the people of this state.

(Emphasis added.)
¶ 11 These repeated references to the MWA's impact on employment matters "within the state" evidence the legislature's intent to focus the impact of the MWA on Washington employees working within the state of Washington.
¶ 12 In an attempt to minimize the impact of this statutory language, the majority analogizes this case to Burnside v. Simpson Paper Co., 123 Wash.2d 93, 864 P.2d 937 (1994). Majority at 851-52. In Burnside, this court held that limiting the application of the Washington Law Against Discrimination (WLAD) (chapter 49.60 RCW) in accordance with a literal interpretation of the term "inhabitants" contained in its statement of purpose would contravene the law's fundamental purpose. Burnside, 123 Wash.2d at 99, 864 P.2d 937. However, Burnside may be distinguished.
¶ 13 As an initial matter, Burnside is distinguishable in that the defendant in that case advocated a literal interpretation of a term in WLAD's statement of purpose in order to limit the court's subject matter jurisdiction to enforce the act. Id. at 98, 864 P.2d 937. No such jurisdictional challenge is mounted in the present case. More importantly, unlike in Burnside, limiting the application of the MWA in accordance with its focus on employees working within the state of Washington in no way impairs the MWA's fundamental purpose. Interpreting the word "hours" in RCW 49.46.130(1) to mean "hours worked in Washington State" is "plainly . . . consistent with . . . the spirit of the MWA[ ]," as evidenced by the plain language of RCW 49.46.005. Majority at 852. Furthermore, while the majority is correct that, as a general proposition, remedial statutes are to be liberally construed, this rule does not require that a statute be stretched beyond its express purpose (here stretched to apply Washington law outside the state's borders). Majority at 852.
¶ 14 The legislature's intent to focus the benefits of the MWA in general, and its overtime provision in particular, on employees working within the state of Washington is further confirmed by a long-standing administrative rule promulgated by the Department of Labor and Industries (DLI): WAC 296-128-011. This rule was adopted in 1989 with reference to RCW 49.46.130(2)(f) and this court's decision in Common Carriers, 111 Wash.2d 586, 762 P.2d 348.[2] Majority at *861 852-53. However, as the majority concedes, WAC 296-128-011 is not limited in application to workers covered by the (2)(f) exemption to RCW 49.46.130(1). Majority at 853. On its face, the rule is broadly applicable. Thus, it may be used to help resolve the ambiguity in RCW 49.46.130(1) regarding the "hours" relevant to computing overtime compensation for employees covered by the FMCA.
¶ 15 WAC 296-128-011, titled "Special recordkeeping requirements," provides:
(1) In addition to the records required by WAC 296-128-010, employers who employ individuals as truck or bus drivers subject to the provisions of the Federal Motor Carrier Act shall maintain records indicating the base rate of pay, the overtime rate of pay, the hours worked by each employee for each type of work, and the formulas and projected work hours used to substantiate any deviation from payment on an hourly basis pursuant to WAC 296-128-012. The records shall indicate the period of time for which the base rate of pay and the overtime rate of pay are in effect.
For the purposes of this section and WAC 296-128-012, "base rate of pay" means the amount of compensation paid per hour or per unit of work in a workweek of forty hours or less. . . . "Overtime rate of pay" means the amount of compensation paid for hours worked within the state of Washington in excess of forty hours per week and shall be at least one and one-half times the base rate of pay.
(emphasis added). WAC 296-128-011 confirms that to receive overtime under RCW 49.46.130(1), an employee must work more than 40 hours per week within the state of Washington.
¶ 16 The majority does not attempt to reconcile the language of the above rule with its decision that RCW 49.46.130(1) applies to all "Washington-based" employees who work any hours at all within the state of Washington. Rather, the majority simply disregards the rule altogether. First, the majority justifies its decision to ignore this rule by claiming that RCW 49.46.130(1) is not ambiguous. Majority at 854. Second, the majority reasons that the above rule is inapposite because it is "inconsistent with the statutes [it] implement[s]." Majority at 853. The majority is wrong on both counts. Accordingly, the majority also erred in not deferring to the reasoned interpretation of RCW 49.46.130(1) by DLI.
¶ 17 Deference is accorded an agency's interpretation of a statute only if "(1) the particular agency is charged with the administration and enforcement of the statute, (2) the statute is ambiguous, and (3) the statute falls within the agency's special expertise." Majority at 854 (citing Edelman v. State ex rel. Pub. Disclosure Comm'n, 152 Wash.2d 584, 590, 99 P.3d 386 (2004); Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 587, 90 P.3d 659 (2004); Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council, 129 Wash.2d 787, 799, 920 P.2d 581 (1996)) (other citations omitted). The majority does not dispute that DLI is charged with the administration and enforcement of the MWA or that the statute falls with DLI's special expertise.[3] Rather, *862 the majority concludes that deference to DLI's rule is unnecessary because RCW 49.46.130(1) is "not ambiguous with regard to hours worked for purposes of determining when overtime compensation is due." Majority at 854.
¶ 18 As noted above, a statute is ambiguous if it is subject to more than one reasonable interpretation. Campbell & Gwinn, 146 Wash.2d at 12, 43 P.3d 4. Here, RCW 49.46.130(1) has in fact been subject to more than one reasonable interpretation regarding overtime hours as evidenced by the conflicting decisions of the trial court and Court of Appeals. Bostain, 127 Wash.App. at 501, 504, 111 P.3d 906. Moreover, Bostain himself has apparently switched views as to the meaning of the term given that he made no claim for overtime during the 10 years he was employed by Food Express. In sum, there can be no real dispute that reasonable minds have differed, and continue to differ, as to the meaning of RCW 49.46.130(1)'s reference to "hours" for purposes of overtime compensation. Bostain, 127 Wash.App. at 511, 111 P.3d 906 (Morgan, J., concurring). Accordingly, the three part test for deference to an agency's interpretation of a statute is satisfied here and this court should be guided in deciding the present case by WAC 296-128-011. Cf. Inniss v. Tandy Corp., 141 Wash.2d 517, 529, 7 P.3d 807 (2000) (relying, in part, on the DLI's interpretation of term "regular rate" as used in RCW 49.46.130(1)).
¶ 19 In addition to asserting that RCW 49.46.130(1) is not ambiguous, the majority argues that it may ignore WAC 296-128-011 because the rule is "inconsistent with the statutes [it] implement[s]." Majority at 853. This alleged inconsistency arises from the fact that DLI's rule explicitly defines the term "hours" for overtime purposes as limited to hours worked within the state of Washington, while RCW 49.46.130(1) does not contain a similar limitation. Id. Yet, further refining the meaning of statutory terms used, but not defined, in the MWA is precisely the function which DLI's rules are meant to perform. Edelman, 152 Wash.2d at 590, 99 P.3d 386 ("An agency charged with the administration and enforcement of a statute may interpret ambiguities within the statutory language through the rule-making process."). There is no irreconcilable conflict between the plain language of RCW 49.46.130(1) and that of WAC 296-128-011. Rather, the latter provision simply serves to interpret the former, in accordance with DLI's authority and expertise. Accordingly, the majority errs in refusing to look to WAC 296-128-011 for guidance in reaching its decision in this case. See In re Sehome Park Care Ctr., 127 Wash.2d at 780, 903 P.2d 443 ("In interpreting a statute, we accord great weight to the contemporaneous construction placed upon it by officials charged with its enforcement. . . . ").
¶ 20 Furthermore, it should be noted that the legislature has not changed the regulatory scheme for interstate truck drivers since WAC 296-128-011 was adopted in 1989. In other words, for the past 15 years, the legislature has acquiesced in the DLI's approach to defining "hours" for purposes of awarding overtime compensation under RCW 49.46.130(1). Contrary to the suggestions of the majority, majority at 854, this legislative acquiescence is relevant to this court's decision. See In re Sehome Park Care Ctr., 127 Wash.2d at 780, 903 P.2d 443 (stating that this court will give "great weight" to agency construction "especially where the Legislature has silently acquiesced in that construction over a long period"); see also Cockle, 142 Wash.2d at 834, 16 P.3d 583 (Guy, J., concurring in dissent) (noting that the legislature had "had ample opportunity to clarify the statute [RCW 51.08.178] if it felt that the Department [of Labor and Industries] was misinterpreting it").
¶ 21 In addition, this court must always seek to construe statutes in a manner that avoids constitutional problems. The majority's interpretation of RCW 49.46.130(1) likely runs afoul of the Commerce Clause, U.S. Const. art I, § 8, cl. 3. See State v. Heckel, 143 Wash.2d 824, 837, 24 P.3d 404, cert. denied, 534 U.S. 997, 122 S.Ct. 467, 151 L.Ed.2d 383 (2001). Implicit in the Commerce Clause is "the principle that the states impermissibly intrude on . . . federal power when they enact laws that unduly burden interstate commerce." Id. at 832, 24 P.3d 404. Under the majority's interpretation, *863 RCW 49.46.130(1) violates the Commerce Clause because the burden it imposes on interstate commerce is clearly excessive relative to the MWA's express public purpose. See id.; see also Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).
¶ 22 Interpreting RCW 49.46.130(1) to apply to all hours worked by an employee when those hours are worked outside of Washington means that the MWA will inevitably burden the extraterritorial activities of interstate truck drivers and their employers. For example, a truck driver could work for 15 hours in Washington, 15 hours in Oregon, and 15 hours in California in a single week. Application of RCW 49.46.130(1) in the manner advocated by the majority would require his employer to track and pay overtime related to the driver's hours worked in Oregon and California as well as Washington. Should this driver's employer wish to avoid paying overtime under the MWA, he might move his operation to another state or at least limit the driver's "on duty" hours while the driver engaged in work outside of Washington. Additionally, this employer would be faced with the unenviable task of researching and resolving any conflicts between the overtime laws of Washington, Oregon, and California.[4] In sum, under the majority's interpretation, RCW 49.46.130(1) will unquestionably burden the interstate activities of the trucking industry.
¶ 23 A statute will fail under the Pike balancing test and thus violate the Commerce Clause if the burden it imposes on interstate commerce is "clearly excessive in relation to the putative local benefits." 397 U.S. at 142. As noted above, the public purpose of the MWA is focused on promoting employment and compensating employees within the state of Washington. Thus, the burden on interstate commerce that will result from the majority's interpretation of RCW 49.46.130(1) is largely unrelated to promotion of the public interests underlying the MWA. Because giving extraterritorial effect to RCW 49.46.130(1) will not actually further the legitimate public interests behind the MWA, the burden the majority imposes is excessive.[5]See Edgar v. MITE Corp., 457 U.S. 624, 642, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982).
¶ 24 Finally, while discarding the bright-line rule regarding overtime compensation for interstate truck drivers that has existed for the past 15 years, the majority offers the trucking industry, its employees, and its customers nothing more than a vague and unpredictable legal future regarding overtime compensation. Specifically, the majority suggests that, following its decision in this case, "[w]hether overtime under RCW 49.46.130(1) must be paid for an employee as a Washington-based employee will depend on factors that courts routinely use for deciding choice of laws issues." Majority at 852 n. 5. The average employer (or trucker) is hardly equipped to perform a choice of laws analysis for every employee potentially considered to be "Washington-based." See Burnside, 123 Wash.2d at 100, 864 P.2d 937 (discussing Washington's approach to choice of law questions). The rules regarding whether an employee must be paid overtime compensation under the MWA should facilitate the decision-making process on the ground, not hinder it. See Williams v. W.M.A. Transit Co., 153 U.S.App. D.C. 183, 472 F.2d 1258, 1265 (1972) (explaining need for overtime compensation rule "which can be applied with reasonable simplicity by area businessmen"). The majority's "solution" for future overtime compensation decisions will result only in more confusion and litigation regarding whether or not a given interstate trucker is entitled to overtime pay. This was not the legislature's intent in enacting RCW 49.46.130(1). See Berrocal v. Fernandez, 155 Wash.2d 585, 595, 121 P.3d 82 (2005) (noting *864 that "the legislature likely did not intend . . . an impractical system" under the overtime provisions of the MWA).

IV. CONCLUSION
¶ 25 RCW 49.46.130(1) requires overtime compensation only for employees who work over 40 hours per week within the state of Washington. Because Bostain did not work over 40 hours per week within the state of Washington, he is not entitled to overtime compensation.[6] Accordingly, I dissent.[7]
WE CONCUR: SUSAN OWENS, RICHARD B. SANDERS, BOBBE J. BRIDGE, JJ.
NOTES
[1] Bostain was told by a dispatcher to spend the night in Eugene, Oregon, rather than continue to Vancouver because he was over his federally permissible driving time. Bostain nevertheless drove to his home outside Vancouver.
[2] Food Express says in its briefing that if it owes any overtime, it is only for 2.5 hours. The parties' arguments ignore this 2.5 hours; therefore, we will not address it.
[3] The Department of Labor and Industries submitted an amicus curiae brief in the Court of Appeals.
[4] RCW 49.46.130 provides in part:

(1) Except as otherwise provided in this section, no employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
(2) This section does not apply to:
. . . .
(f) An individual employed as a truck or bus driver who is subject to the provisions of the Federal Motor Carrier Act (49 U.S.C. Sec. 3101 et seq. and 49 U.S.C. Sec. 10101 et seq.), if the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to that required by this subsection, for working longer than forty hours per week.
[5] Whether overtime under RCW 49.46.130(1) must be paid for an employee as a Washington-based employee will depend on factors that courts routinely use for deciding choice of laws issues. This is discussed further below.
[6] The Court of Appeals concluded that it could "use WAC 296-128-011 as an aid in determining the legislative intent of RCW 49.46.130" because "the [Department's] interpretation of RCW 49.46.130 does not conflict with the legislative intent." Bostain, 127 Wash.App. at 507, ¶ 22, 111 P.3d 906. Aside from the obvious circularity of this conclusion, the court erroneously believed that, without more, "the [Department's] interpretation of the statute" was entitled to great weight "absent a compelling indication that its interpretation conflicts with the legislative intent." Id. at 506, ¶ 22, 111 P.3d 906 (citing Wash. Water Power Co. v. Wash. State Human Rights Comm'n, 91 Wash.2d 62, 68-69, 586 P.2d 1149 (1978)). However, the correct principle stated in the cited case is, as explained above, that deference to an agency interpretation is appropriate only if the statute is ambiguous and only if the agency is charged with the statute's implementation. Wash. Water Power Co., 91 Wash.2d at 68-69, 586 P.2d 1149.
[7] Food Express's reliance on a letter from a Department employee concerning whether Bostain was owed overtime pay is misplaced, as the Court of Appeals recognized. The employee's subjective understanding of the agency's intent is not a formal administrative decision entitled to any weight. See City of Sunnyside v. Fernandez, 59 Wash.App. 578, 581, 799 P.2d 753 (1990).
[8] The Court of Appeals erroneously said that we "held that RCW 49.46.130 did not apply." Bostain, 127 Wash.App. at 507, ¶ 24, 111 P.3d 906 (emphasis added).
[9] Amici Washington Trucking Associations/American Trucking Associations, Inc. maintain that if RCW 49.46.130 is interpreted to require overtime in this case, the statute would be preempted by the Federal Aviation Administration Authorization Act (FAAA) of 1994, 49 U.S.C. §§ 14501-14505. The FAAA's preemption clause provides that a state may "not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Amici rely heavily on Morales v. Trans World Airlines, Inc., 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), in which the Court gave a broad interpretation to an identical preemption clause in the Airline Deregulation Act (ADA), Pub.L. No. 95-504, 92 Stat. 1705. Amici fail to note, however, that the Court has since pulled back from its previous interpretation. See generally Californians for Safe & Competitive Dump Truck Trans. v. Mendonca, 152 F.3d 1184, 1187-89 (9th Cir.1998) (explaining evolution of the Court's interpretation of the preemption clause). Applying the more recent cases interpreting the preemption clause, the Ninth Circuit in Mendonca held that California's prevailing wage statute was not preempted by the FAAA. The California court reasoned that although the prevailing wage law was "in a certain sense" "`related to' [the appellants'] prices, routes and services, . . . the effect is no more than indirect, remote, and tenuous." Id. at 1189 (citing Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)). We conclude that just as the prevailing wage statute in Mendonca was not preempted, RCW 49.46.130(1)'s overtime provision, as interpreted to require overtime in this case, is not preempted by the FAAA.
[1] While I reach the same conclusion in this dissent as was reached by the Court of Appeals, my rationale is different in that I conclude RCW 49.46.130(1) is ambiguous regarding the central issue. See Bostain v. Food Express, Inc., 127 Wash.App. 499, 506, 111 P.3d 906 (2005); but see Bostain, 127 Wash.App. at 511, 111 P.3d 906 (Morgan, J., concurring). This ambiguity makes it appropriate to look to related administrative rules as well as the statute's legislative history for guidance in interpreting RCW 49.46.130(1). City of Pasco v. Pub. Employment Relations Comm'n, 119 Wash.2d 504, 509, 833 P.2d 381 (1992); State v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 12, 43 P.3d 4 (2002).
[2] The federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 213(b)(1), exempts from federal overtime compensation interstate truck drivers under the Federal Motor Carrier Act (FMCA) (49 U.S.C. § 31501-31504). In Common Carriers, this court held that the FMCA did not preempt the MWA's overtime wage provisions. 111 Wash.2d at 590, 762 P.2d 348. The effect of this holding was to subject interstate truck drivers in Washington to an overtime scheme, namely, RCW 49.46.130(1). To reverse this result, the legislature adopted the exemption in (2)(f):

(2) This section [RCW 49.46.130(1)] does not apply to:
. . . .
(f) An individual employed as a truck or bus driver who is subject to the provisions of the Federal Motor Carrier Act [49 U.S.C. § 31501 et seq.], if the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to that required by this subsection, for working longer than forty hours per week. . . .
Laws of 1989, ch. 104, § 1; Final Legislative Report, 51st Leg., at 267 (Wash.1989). While Bostain is a truck driver subject to the FMCA, he does not come within the (2)(f) exemption because Food Express did not provide him with overtime compensation or its reasonable equivalent. Since Bostain does not come within the (2)(f) exemption, RCW 49.46.130(1) applies.
[3] DLI has the authority to supervise, administer, and enforce all laws pertaining to employment, including wage and hour laws. RCW 43.22.270. Moreover, the determination of the meaning of particular terms within the MWA's overtime compensation provisions is within DLI's specialized expertise. Cf. Schneider v. Snyder's Foods, Inc., 116 Wash.App. 706, 717, 66 P.3d 640, rev. denied, 150 Wash.2d 1012, 79 P.3d 446 (2003) (concluding that "determination of whether a compensation scheme constitutes the reasonable equivalent of statutory overtime is within the Department's specialized expertise").
[4] For example, unlike the MWA, Or. Admin. R. XXX-XX-XXXX(3) tracks the FLSA exemption for employees subject to the FMCA and, accordingly, does not provide overtime for interstate truck drivers.
[5] While the Court of Appeals held in Overnite Transp. Co., 67 Wash.App. at 32, 834 P.2d 638, that application of the MWA's overtime provisions to interstate motor carriers did not unduly burden interstate commerce, that case was explicitly limited in its analysis to employees working over 40 hours per week within the state of Washington.
[6] An audit of Bostain's final year of work for Food Express showed that Bostain averaged a total of 48 hours of driving/loading but that he never worked more than 40 hours per week within the state of Washington. Majority at 849.
[7] My conclusion regarding the meaning of "hours" for purposes of RCW 49.46.130(1) and, thus, that Food Express should prevail before this court necessitates that I also dissent from the majority's determination regarding costs and fees. I would affirm the Court of Appeals decision to grant Food Express attorney fees. Bostain, 127 Wash.App. at 510, 111 P.3d 906.